Joseph **ERWIN**, Plaintiff-Appellant,

v.

**LYKES BROTHERS STEAMSHIP CO.,**
**Defendant-Appellee.**

**No. 72-2748**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1973.

Rehearing Denied Feb. 28, 1973.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Roger W. Jordan, John D. Ponder, Metairie, La., for plaintiff-appellant.

Robert M. Contois, Jr., Andrew T. Martinez, New Orleans, La., for defendant-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

The only issue in this case, brought under the general maritime jurisdiction, is whether the SS LOUISE LYKES was "in navigation" at the time appellant, a shore-based worker assisting in repairs to the vessel, was injured. If she was not in navigation at the time, then her owner owed no warranty of seaworthiness to appellant, and the district court properly awarded judgment to the shipowner.

On the night of September 14, 1970, appellant Erwin was injured while changing valves on a water pump aboard the vessel. The repairs in which he was assisting were necessitated by a special survey periodically required of this type of vessel by the American Bureau of Shipping. If the work had not been done, the vessel would have lost her American Bureau classification and thus her United States Coast Guard Certificate of Inspection, and consequently would have been subject to seizure had she attempted to operate as an American flag vessel. 46 U.S.C. §§ 361, 362, 399, 496, 497. On September 2, 1970, the vessel arrived in ballast at New Orleans. The following day, her crew was signed off articles, and all power on the vessel was secured. From September 8, to October 19, 1970, repairs were performed by appellant's employer, Boland Machine and Manufacturing Company. The work performed by Boland, at a total cost of

$364,066, did not entail any structural changes, but did include opening up and dismantling the vessel's main engines, main generators, boilers, auxiliary machinery, pumps, and all systems vital to the operation of the vessel. During the repair period, the vessel was physically incapable of getting under way, having to be moved to various job sites by tugs. While undergoing repairs, the vessel was attended by a Lykes Port Engineer, her Master, Chief Mate, Chief Engineer, and First Assistant Engineer. The Lykes personnel were regularly aboard the vessel between 8 A.M. and 5 P.M., excluding weekends, and were quartered ashore, because the vessel was not in a state to permit them to remain aboard. These personnel served primarily as inspectors of the work in progress; although they supervised routine work, Boland was responsible for major decisions.

 Whether, under these circumstances, the vessel was in navigation at the time of the injury is a question of fact whose resolution may not be disturbed absent a showing of clear error. Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961). In determining the status of the vessel, inquiry should focus on the extent of repair operations and on who controls those operations. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Johnson v. Oil Transport Co., 5th Cir. 1971, 440 F.2d 109. The locus of supervisory authority is not in itself controlling, *Johnson, supra*; but in a case involving extensive repairs, the owner's surrender of control to the contractor is often helpful in deciding whether the owner was at the time of the injury holding the vessel out as being seaworthy, *see* Williams v. Avondale Shipyards, Inc., 5th Cir. 1971, 452 F.2d 955, and thus whether the vessel was in navigation at that time. In the instant case, control over the repairs rested ultimately with Boland, with Lykes personnel serving mainly as inspectors. Lykes personnel had no authority to make major decisions, and were aboard between 8 A.M. and 5 P.M. merely to supervise routine tasks. They were quartered ashore, and were generally not present during the night shift, when appellant was injured.

In addition, the vessel was undergoing a major overhaul necessary to enable her to remain in commerce as an American flag vessel. Her engines, generators, boilers, and pumps were dismantled. Power was supplied from shore. Her crew had signed off. She had to be moved by tugs. No such extensive repairs were involved in Drake v. E. I. DuPont de Nemours & Co., 5th Cir. 1970, 432 F.2d 276, upon which appellant places great emphasis.

Under these circumstances, we hold that the district court properly found that the vessel was not in navigation at the time of the injury.

Affirmed.