John WARNER, Jr., Plaintiff-Appellee,

v.

FISH MEAL COMPANY, and/or Alewise, Inc., as owner of the M/V LaSALLE and the M/V LaSALLE, Defendants Third-Party Plaintiffs-Appellants,

Southern Protein Co. et al., Third-Party Defendants-Appellants.

No. 75-2650.

United States Court of Appeals, Fifth Circuit.

March 18, 1977.

Wood Brown, III, New Orleans, La., for Southern Protein and others.

Wilson M. Montero, Jr., New Orleans, La., for plaintiff-appellee.

Before MORGAN and FAY, Circuit Judges, and HUNTER, District Judge.*

PER CURIAM:

John Warner was injured on February 21, 1972 while at work on a vessel afloat in navigable waters. He instituted this suit, contending that his injuries were caused by the unseaworthy condition of the vessel. The district court found for Warner and this appeal was taken. We affirm.[1]

■ The critical inquiry is whether the MV LaSALLE was "in navigation." If she was not, then her owner owed no warranty of seaworthiness to Warner. *West v. United States,* 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; *Roper v. United States,* 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1. The test which we have restated and reiterated was initiated in *West*:

> The focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on shipboard at the moment of injury. 361 U.S. at 122, 80 S.Ct. at 192.

* Senior District Judge for the Western District of Louisiana, sitting by designation.

1. The district court found that the vessel was unseaworthy and that it had been made so by the action of plaintiff's employer in bringing aboard a defective grinder. The court further found that this unseaworthiness was a proximate cause of plaintiff's injury, and that plaintiff had been guilty of contributory negligence to the extent of 50%. These findings of fact are clearly supported by the record.

This court, elaborating on *West* and subsequent case law in *Waganer v. Sea-Land Service, Inc.* (5th Cir. 1973), 486 F.2d 955, further refined the test:

> (i) the ship in question must have been in navigational status, and not "dead", which in turn depends upon whether the contracted work is minor or major, and who has custody and control of the ship while the work is being done; and (ii) the pattern of repair must reflect work traditionally and ordinarily done by seamen, excluding persons performing such tasks as making major repairs requiring dry-docking or special skills. *Martinez v. Dixie Carriers, Inc.* (5th Cir. 1976), 529 F.2d 457, at 469.

The MV LaSALLE was a Menhaden fishing boat. The fishing season is set by statute and runs from the third Monday in April to the second Tuesday in October of any given year. The vessel was afloat at the Southern Protein dock. The district judge concluded that the LaSALLE was idled, not because of the need of major repairs, but to undergo an annual maintenance and care schedule. The custody and control of the vessel was to all intents and purposes retained by the owner.[2]

The engines and generators were aboard. It would have taken an "intensive" week to place the vessel back in a completely operative condition.

 The amount of work being performed on the vessel was approximately $30,000. The value of the vessel was in excess of $1,000,000. The type of work being performed by Warner could be done by either shoreworkers or seamen. Customarily, at the conclusion of the season, fishing boats of this type were tied up to undergo maintenance and repair. The fishing crew aboard departed and a new group came aboard to handle the repairs. Mr. Warner was a member of that group. Whether under these circumstances MV LaSALLE was in navigation at the time of the injury is a question of fact, the resolu-

tion of which may not be disturbed, absent a clear showing of error. *Roper v. United States,* 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1; *Erwin v. Lykes Brothers Steamship Company,* 472 F.2d 1217 (5th Cir. 1973).

 We are unwilling on the basis of the record to upset the trial court's factual determination. The judgment of the district court should be affirmed. It is.

---

2. The owner was a separate corporation, but there were interlocking corporate ownerships between it and Southern Protein.