**Nelson ABSHIRE, Plaintiff-Appellee,**

v.

**SEACOAST PRODUCTS, INC., Defendant-Appellant.**

**No. 80–3941.**

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1982.

---

Robert W. Clements, Lake Charles, La., Frank J. Peragine, Daniel J. Caruso, New Orleans, La., for defendant-appellant.

Cornelius Dupre, II, Robert K. Guillory, Eunice, La., for Abshire.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

WISDOM, Circuit Judge:

Again this court must determine a question of seaman status under the Jones Act. We hold that there is sufficient evidence for this case to go to the jury to determine whether the plaintiff, a welder attached to a fleet of vessels, injured while replacing an engine, qualifies as a seaman under the Jones Act. Additionally, on the threshold procedural issue, we hold that the trial judge acted within his discretion in reconsidering an earlier summary judgment by another district judge holding that the plaintiff was not a seaman.

## I.

The appellant/defendant, Seacoast Products, Inc., is a fishing company owning and operating twenty-one menhaden fishing vessels. The appellee/plaintiff, Nelson Abshire, is a forty-one year old welder-mechanic. On February 20, 1975, Abshire was injured while replacing the main engines on one of Seacoast's fishing vessels. At the time of the accident and for some years before, Seacoast was Abshire's employer. Abshire sued Seacoast under the Jones Act, 46 U.S.C. § 688, et seq.

Initially, the district judge assigned to hear the case granted Seacoast's motion for partial summary judgment that Abshire was not a Jones Act "seaman" or "a member of the crew" of a vessel.[1] Abshire amended his complaint to state a claim for negligence under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Shortly thereafter, the case was reallotted to a newly-appointed district judge. Abshire then moved for reconsideration of the question of seaman status, citing a recent case, *Landry v. Amoco Production Co.*, 5 Cir. 1979, 595 F.2d 1070, in support of his motion. Under Fed.R.Civ.P. § 54(b), the second judge vacated the partial summary judgment of the first judge. He then granted Abshire's motion for a jury trial on the issue of Jones Act "seaman" status.

The district court conducted a bifurcated trial on the merits, presenting first to the jury the issue of seaman status. Each party moved for a directed verdict at the close of all the evidence. The court denied the motions and submitted the issue to the jury. In response to a special interrogatory, the jury answered that Abshire was a seaman or a member of a crew of a vessel or of a fleet of vessels at the time of the accident. The judge then conducted a trial on the issue of liability and damages. The jury awarded Abshire $366,000 and found that Seacoast and Abshire were negligent, in the proportions of 60 percent and 40 percent, respectively. Additionally, a judgment was rendered in favor of the intervenors, two insurance companies, which had paid Abshire compensation under the Longshoremen's and Harbor Workers' Compensation Act.

Seacoast filed motions for judgment notwithstanding the verdict and, alternatively, for a new trial on the issue of seaman status. The district court denied these motions. Seacoast appeals the district court's denial of these motions, as well as its earlier denial of Seacoast's motion for directed verdict. Additionally, the appellant contends that the district judge erred when he vacated the earlier partial summary judgment by another district judge on seaman status, after the case was reallotted to him.

---

1. The phrase "a member of the crew" is used interchangeably with the term "seaman". The Jones Act, enacted in 1920, uses the term "seaman". The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, enacted in 1927, applied to all maritime workers except masters and "members of a crew of [a] vessel". The effect of this Act, the Su-

preme Court has held, was to restrict the benefits of the Jones Act to "members of a crew of [a] vessel". *Swanson v. Marra Bros.*, 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. *See also Guidry v. South La. Contractors, Inc.*, 5 Cir. 1980, 614 F.2d 447; *Noble Drilling Corp. v. Smith*, 5 Cir. 1969, 412 F.2d 952.

## II.

Both issues for review in this case revolve around seaman status under the Jones Act, 46 U.S.C. § 688, et seq. The Jones Act provides:

Any seaman who shall suffer personal injuries in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury....

■ *Offshore Co. v. Robison*, 5 Cir. 1959, 266 F.2d 769, established in the Fifth Circuit the test for seaman status under the Jones Act. In *Robison* we held that there was an evidentiary basis for a finding that a workman was a seaman:

(1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of the mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

266 F.2d 769, 779. In *Braniff v. Jackson Avenue-Gretna Ferry, Inc.*, 5 Cir. 1960, 280 F.2d 523, we extended the assignment to a vessel to the assignment to "a fleet of vessels".

■ The Supreme Court had earlier established the principle that seaman status is basically a question of fact. *Texas Co. v. Gianfala*, 5 Cir. 1955, 222 F.2d 382, *rev'd per curiam*, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775. This court has held, however, that the Supreme Court in *Gianfala* and other cases did not intend to strip the judge of his authority to direct a verdict or grant summary judgment, if there is no genuine issue of material fact to be submitted to the jury. *Texas Co. v. Savoie*, 5 Cir. 1957, 240 F.2d 674. *See also Longmire v. Sea Drilling Co.*, 5 Cir. 1980, 610 F.2d 1342; *Holland v. Allied Structural Steel Co., Inc.*, 5 Cir. 1976,

539 F.2d 476. Thus, although seaman status is an issue of fact, when there are no facts in dispute, a court may rule on the issue as a matter of law. If there is no evidence supporting the requisites set out in *Robison*, the court may hold as a matter of law that the claimant is not a seaman. *Thibodeaux v. J. Ray McDermott & Co.*, 5 Cir. 1960, 276 F.2d 42. Conversely, if the *Robison* requisites are met and there is no dispute over these factors, the court may grant a summary judgment or directed verdict declaring as a matter of law that the plaintiff is a seaman. *Producers Drilling Co. v. Gray*, 5 Cir. 1966, 361 F.2d 432. *See* Fallon, *The Test of Seaman Status*, 55 Tul. L.Rev. 1018, at 1021–22.

## III.

This is a close case. At the trial, the plaintiff submitted evidence showing that he was a seaman for purposes of the Jones Act. He showed that he was employed by the Marine Division of Seacoast, one of its three divisions; that he was permanently or indefinitely attached to a vessel or a specified fleet of vessels operating out of Louisiana and Mississippi ports; that he did 90–99 percent of his work aboard vessels and always worked on a vessel or fleet of vessels that was in navigation; and that he always contributed to the maintenance and mission of vessels while at sea or at anchor. During the fishing season he operated out of Cameron and Intracoastal City, both ports in Louisiana.

According to the plaintiff, during the off-season the ships were brought into the Intracoastal City port, near Abbeville, Louisiana, and temporarily stood at anchor awaiting future trips during which time they underwent repairs and maintenance. At no time were the ships out of navigation, permanently attached to the shore, in dry dock, or converted to any use other than as fishing vessels. Abshire was injured while making repairs to the MV ACADIA. A five-year employee of Seacoast Products, Inc., James Landry, testified that the MV ACADIA was floating, was not in dry dock, was not sunk, was not permanently at-

tached to the shore, and had driven up under its own power. The vessels of Seacoast Products were never out of "commission" and were always "commissioned" by the Coast Guard as navigable vessels.

The plaintiff's title was that of marine welder and mechanic. At no time did he ever perform any repairs or maintenance to the wharfs, docks, aprons, catch receiving areas, or to the processing plant. He was totally and completely attached to the Marine Division and spent his entire working time aboard ships, except for those rare occasions where he was rigging or making preparation for work to be performed aboard vessels. His work was not temporary or transitory in nature and his employer kept careful records to show to which ship he was attached while he was performing his duties. He would usually spend many days and on some occasions several weeks at a time on a particular vessel. He worked side by side with the engineers and other seamen who were assigned to the MV ACADIA on a year-round basis. On some occasions, he put to sea to test the success of his repairs and his maintenance work and often had to move the boats from one dock to another involving a 30 to 40 minutes boat ride. During this time he aided in navigation and operation of the vessel at sea, performing the customary duties of an engineer, mate, or even captain.

The defendant presented evidence which directly contradicts the plaintiff's contentions. The defendant showed that the menhaden fishing season runs from mid-April to mid-October, and that off-season, the fishing vessels were generally overhauled at Seacoast's marine maintenance department located in Intracoastal City. The vessels had no captains or crews during the off-season; they were simply tied up at dock awaiting repairs, overhaul, or outfitting as the case may be, in preparation for the next fishing season.

The defendant insists that Abshire was never employed to work on any vessel while fishing operations were underway and that his work with Seacoast was seasonal. The defendant concludes that Abshire was a shore-based maintenance employee. He never went to sea; he returned to his home every evening after work; and he usually ate his lunch in the Seacoast office located on land. Abshire held no type of seaman's papers; his contact with vessels under way was in connection with testing them in connection with repairs and maintenance.

At the time of his injury, Abshire was in the process of replacing the MV ACADIA's two main engines. The engines had been removed from the vessel, and the plaintiff had been performing major repairs on the vessel for three to four weeks. Abshire sustained his injury when the new engines were being moved into place. The new engines were two or three times larger than the old engines; the vessel required major modifications and structural changes before the new engines could be installed. According to Abshire's own testimony, several weeks of work would have been required to place the MV ACADIA back in navigation at the time of his accident.

Seacoast contends strongly that Abshire's accident did not occur on a vessel that was in navigation. The defendant points to evidence that the MV ACADIA had been laid up for the winter. Its crew had been discharged and it was undergoing major overhaul by shore-based workmen, paid at hourly rates and living ashore, who had no connection with the seagoing aspects of the vessel. The defendant argues that vessels undergoing major repairs which require shore-based workmen possessing specialized skills are not in navigation. *Warner v. Fish Meal Co.*, 5 Cir. 1977, 548 F.2d 1193, 1194; *Edwin v. Lykes Brothers Steamship Co.*, 5 Cir. 1973, 472 F.2d 1217; *Wixom v. Boland Marine & Mfg. Co., Inc.*, 5 Cir. 1980, 614 F.2d 956. *See also Desper v. Starved Rock Ferry Co.*, 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205.

In determining whether a ship is in navigation, "inquiries should focus on the extent of repair operations and on who controls those operations". *Edwin v. Lykes Brothers Steamship Co.*, 5 Cir. 1973, 472 F.2d 1217, 1219. The plaintiff points to evidence showing that the MV ACADIA

was docked for repairs done on the Seacoast vessels each year and not because Seacoast intended to take the MV ACADIA out of commerce.

In *Waganer v. Sea-Land Service, Inc.*, 5 Cir. 1973, 486 F.2d 955, this court overruled a summary judgment entered on behalf of the vessel owner. The court in *Waganer* observed that the vessel owner never intended to take the vessel out of commerce; that the vessel entered the port under its own power; that the lay-up time was 21 days in all; that the custody and control of the vessel was important since the vessel owner contended that he had no custody or control; and finally, that the vessel owner was under an obligation to show that the repair work being done was work traditionally and ordinarily done by seamen. Here, the MV ACADIA was being repaired to go out to sea. Additionally, as in *Waganer*, testimony was given at trial that the MV ACADIA entered port under its own power. Although the lay-up time in *Waganer* was only 21 days, the repair time on the MV ACADIA did not take much longer, and the control of the vessel was at all times in the hands of the owner, Seacoast. Finally, Seacoast's basic argument, that the work performed by Abshire was not the kind traditionally and ordinarily done by seamen, disregards the fact that the man who was actually assisting Abshire and who dropped the chain hoist injuring Abshire was in fact the Captain and Pilot of the ship.

■ Under the accepted standard of review and within the framework of the *Robison* guidelines, we are compelled to conclude that the trial judge acted properly in allowing this issue to go to the jury. The standard of review is the same for both the motion for directed verdict and the motion for judgment notwithstanding the verdict. These motions raise the question whether there is or was any substantial evidence to take the case to the jury. Since, if granted, they deprive the losing party of a determination of the facts by the jury, they should be cautiously and sparingly granted. The propriety of granting or denying the motions is tested both in the trial court and on appeal by the same rule: Both the trial court and the reviewing court must view the evidence and all inferences most favorably to the party against whom the motions are made. Fed.R.Civ.P. 50; Wright & Miller, 9 Federal Practice and Procedure: §§ 2533–37. While there was conflicting evidence in this case, there was sufficient evidence in favor of the plaintiff to lead a jury reasonably to find that the plaintiff was a seaman, that he "performed a substantial part of his work on the vessel", that his duties contributed to the operation of the vessel for its future trips, and that the vessel was in navigation.

■ The plaintiff also moved for a new trial. Under Fed.R.Civ.P. 50, the court has a wide discretion in setting aside a verdict and granting a new trial even if the verdict is supported by substantial evidence. Still, the evidence and all inferences must be viewed in the light most favorable to the party against whom is made a motion for a new trial. Wright & Miller, 7 Federal Practice and Procedure: §§ 2538–39. Applying this standard to the evidence and all the inferences in the record we find that the evidence and inferences support the jury's finding for the plaintiff.

## IV.

■ We conclude that the district judge acted properly within his discretion when he vacated the earlier partial summary judgment by another district judge on seaman status, after the case was reallotted to him.

■ The general rule is that when a district judge has rendered an order or judgment and the case is then transferred to the calendar of another judge, the successor judge should not overrule the earlier order or judgment. *Stevenson v. Four Winds Travel, Inc.*, 5 Cir. 1972, 462 F.2d 899, 904–05. This rule of thumb is by no means absolute. It is heavily accented by the principle of comity. As such, it should give way, if the need should arise, to the interests of justice and economy when those interests conflict with rigid adherence to the rule. The successor judge has the same

838

discretion as the first judge to reconsider the order. As this court has said, deference should be given to the discretion of the successor judge:

> It is certainly proper that, generally, one judge, in coordinate jurisdiction with another judge, should not overrule that other. But, as we read the cases, this matter is essentially one within the sound discretion of a trial judge conducting his court in the interest of furthering the administration of justice.

*United States v. Koenig*, 5 Cir. 1961, 290 F.2d 166, 172 (footnotes omitted), *aff'd sub nom. DiBella v. United States*, 1962, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614. *See Gallimore v. Missouri Pacific Railroad Co.*, 5 Cir. 1981, 635 F.2d 1165, 1171–72; *Guillory v. Administration of Tulane University*, 5 Cir. 1962, 306 F.2d 489.

■ Finally, only rarely may a district judge conclude as a matter of law that an injured individual is not a seaman within the meaning of the Jones Act. *Barrios v. Louisiana Construction Materials Co.*, 5 Cir. 1972, 465 F.2d 1157. In *Barrios* we read two Supreme Court decisions to "make it plain that the issue is to be left to the jury even when the claim to seaman status appears to be a relatively marginal one". 465 F.2d at 1162, *citing Senko v. La Crosse Dredging Corp.*, 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404, *rehearing denied* 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 and *Grimes v. Raymond Concrete Pile Co.*, 1958, 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737.

Accordingly, we AFFIRM the judgment of the district court.