**STATE LINE FISHING & HUNTING CLUB, INC. et al.**

v.

**CITY OF WASKOM, TEXAS.**

**Civ. A. No. M–88–0147.**

United States District Court, E.D. Texas, Marshall Division.

Jan. 2, 1991.

**1106**

T. John Ward, Brown Maroney Oaks & Hartline, Houston, Tex., for plaintiff.

David J. LaBrec, Strasburger & Price, Dallas, Tex., for defendant.

### MEMORANDUM RULING

STAGG, District Judge, Sitting by Designation.

This case is presently before the court after reassignment from Judge William Wayne Justice of the Eastern District of Texas. As venue is proper only in the Eastern District of Texas, assignment to this court does not transfer venue to the Western District of Louisiana. Pending are several motions to reconsider or alter judgments entered by Judge Sam B. Hall, Marshall Division for the Eastern District of Texas. The court will deal with each motion separately.

THE FACTS:

Plaintiff, State Line Fishing & Hunting Club, Inc., is a corporation which owns approximately 200 acres of land in Caddo Parish, Louisiana, on which State Line Lake is located. The lake is a man-made reservoir which was filled for the first time in 1913. The individual plaintiffs, as shareholders, lease property from State Line Fishing & Hunting Club, Inc., and have built improvements on their property.

Defendant, City of Waskom, Texas, operates a waste water treatment facility located approximately 1½ miles from plaintiffs' property. Although the City of Waskom operated an antiquated system prior to 1975, in that year it constructed the current waste water treatment facility with the assistance and approval of the Environmental Protection Agency ("EPA") and the Texas Water Commission ("TWC").

Both parties agree that State Line Lake has become unusable, particularly since 1986, because of severe moss coverage of the lake. Plaintiffs allege that the moss growth was caused primarily by an effluent discharge from defendant's waste water treatment facility. Plaintiffs assert jurisdiction under the Federal Water Pollution Control Act (hereinafter, "Clean Water Act"), 33 U.S.C. § 1365(a), to enforce "an effluent standard." Plaintiffs also assert claims under this court's diversity jurisdiction for negligence, nuisance and trespass under Texas state law.

Plaintiffs seek civil penalties and a permanent injunction under the Clean Water Act to have the City of Waskom abide by the EPA's effluent discharge permit. Under their state law claims, they seek monetary damages for the temporary damage to their property and/or a permanent injunction to alleviate the pollution problem.

Defendant claims that plaintiffs do not have standing under the Clean Water Act, as the defendant was not "in violation" of the Clean Water Act at the time the suit was filed. It also asserts that any damage to plaintiffs is permanent in nature and, therefore, the statute of limitations bars the state law claim. Both sides agree that the moss began covering the lake approximately 20 years ago. If plaintiffs' injuries are permanent, then the claim is barred by Texas' two-year statute of limitations which began to run at the time of the first injury. Plaintiffs, however, claim that their claim is temporary in nature and, therefore, not barred by the two-year statute of limitations. Plaintiffs claim that the moss problem could be substantially eliminated by injunctive relief, and that the moss growth is not constant but disappears in the winter and recurs in summer.

Based upon these contentions, the City of Waskom filed its motion for summary judgment on December 20, 1989, asking that plaintiffs' Clean Water Act claim be dismissed for lack of subject matter jurisdiction, and that plaintiffs' state law claims be dismissed as they are barred by the applicable statute of limitations or, in the alternative that the defendant is immune from liability as a matter of Texas law because the operation of a waste water facility is a governmental function. The plaintiffs opposed the motion for summary judgment and asked for partial summary judgment on their Clean Water Act claim.

PROCEDURAL POSTURE:

On January 25, 1990, Judge Hall entered summary judgment in favor of the defendant. The court first found that plaintiffs' suit was not barred by administrative preclusion. The court next found that defendant was entitled to summary judgment on the Clean Water Act claim. In addition, the court found that, because plaintiffs had facts before them to show that the moss was caused by factors other than the effluent emission and because the defendant's noncompliance with the EPA standards were few and sporadic, plaintiffs' claims were not brought in good faith. The court then assessed attorney's fees and costs against plaintiffs under 33 U.S.C. § 1365(d). The court also granted summary judgment on plaintiffs' state law claims, finding that plaintiffs' injuries were permanent and, therefore, the claims had prescribed. The court amended its order on February 6, 1990, withdrawing its language finding that the claim was brought in bad faith and instead held that the claim was groundless, and reinstated the award of attorney's fees to the defendant under 33 U.S.C. § 1365(d).

Plaintiffs filed a motion to reopen the evidence or for a new trial, arguing that the court should reconsider its granting of summary judgment in favor of defendant on the merits or, in the alternative, should reopen evidence on the issue of attorney's fees for defendant, as neither party had briefed the issue of whether plaintiffs' suit was groundless. Defendant filed a motion for costs, which plaintiffs opposed. Attached to the plaintiffs' opposition to defendant's motion for costs was the affidavit of Marshall attorney William Huffman. Mr. Huffman practices law in the same law firm with Judge Hall's son-in-law. Although Mr. Huffman had been listed as an expert witness on attorney's fees in a pretrial order filed with the court in October

1989, which the court had adopted, Judge Hall found that Mr. Huffman's affidavit was filed for the sole purpose of forcing Judge Hall to recuse himself. After berating plaintiffs for the "ruse" in which they had allegedly participated, Judge Hall recused himself. Thereafter, the case was assigned to Judge William Wayne Justice of the Eastern District of Texas, Tyler Division.

Plaintiffs filed a motion to vacate the factual findings in the recusal order, particularly those indicating that plaintiffs' counsel had acted unethically in submitting Mr. Huffman's affidavit concerning attorney's fees. Judge Justice thereafter assigned the case to this court.

LAW OF THE CASE:

■ Defendant argues that the "law of the case" doctrine should preclude this court from reopening the evidence. Defendant argues that Judge Hall was intimately familiar with the case's evidence and issues and for this court to revisit the issues and review the evidence would be a needless, monumental task and a waste of judicial economy. Defendant further asserts that the plaintiffs' remedy is to appeal and that appeal is to be made to an appellate court and not to this court.

Plaintiff points out that the three motions pending before this court have never been ruled on by Judge Hall and, therefore, the law of the case doctrine cannot bar the court from ruling. Furthermore, the plaintiffs correctly state that the controlling case in the Fifth Circuit regarding a second court's reconsideration of a first court's ruling is *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832 (5th Cir.1982). In *Abshire*, the initial trial judge entered a partial summary judgment, finding that the plaintiff was not a Jones Act seaman. The case was, thereafter, assigned to a different district judge who granted plaintiff's motion for reconsideration of the partial summary judgment. The case went to trial, and the jury found that plaintiff was a seaman and awarded damages under the Jones Act. The Fifth Circuit held that the successor judge acted well within his discretion in vacating the earlier partial sum-

mary judgment entered by the prior judge. 668 F.2d at 837. The Court recognized that "the general rule is that when a district judge has rendered an order or a judgment and when the case is then transferred to the calendar of another judge, the successor judge should not overrule the earlier order or judgment." *Id.* This rule is merely a starting point. The successor judge has the same discretion as the first judge to reconsider the order. *Id.* at 837–38.

CHARACTERIZATION OF THE MOTION:

■ The plaintiffs have filed a motion to reopen the evidence or, in the alternative, a motion for new trial. The Federal Rules do not explicitly provide for a motion for reconsideration of summary judgment; however, the Fifth Circuit has instructed the district courts to treat these motions as either Rule 59(e) or Rule 60(b) motions. In *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990), the Fifth Circuit delineated the different standards of review used to consider a Rule 59(e) motion or a Rule 60(b) motion. A motion for reconsideration filed within ten days after a final judgment is rendered will be treated as a motion to alter or amend. Any motion for reconsideration filed outside of the ten-day limitation will be treated as if it were a Rule 60(b) motion. Plaintiffs' motion was filed within ten days of the final judgment in this case and will, therefore, be treated as a Rule 59(e) motion.

■ In *Lavespere*, the plaintiff filed a motion for reconsideration of the granting of a summary judgment and submitted, in support of that motion, evidentiary materials that she had failed to file in opposition to the summary judgment motion. The Fifth Circuit explained:

A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements. Unlike Rule 60(b), Rule 59(e) does not set forth any specific grounds for relief. Nor can we discern any basis for engrafting the strict limita-

tions of the former onto the latter. We conclude, therefore, that in order to reopen a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the mover need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect, or that the evidence is such as to show that the judgment was manifestly wrong.

Because Rule 59(e) is not subject to the limitations of Rule 60(b), the district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under the former rule. That discretion, of course, is not limitless. In any case in which a party seeks to upset a summary judgment on the basis of evidence she failed to introduce on time, two important judicial imperatives clash: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts. The task of the district court in such a case is to strike the proper balance between these competing interests. In order to do this, the court should consider, among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the nonmovant before she responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

*Lavespere*, 910 F.2d at 173–174 (footnotes omitted). The plaintiffs in this case ask that the court consider additional evidence which they failed to file with their initial opposition to motion for summary judgment. The plaintiffs contend that they did not submit this additional evidence at first because they were not required to try their case on summary judgment and had thought they submitted all that was needed to create a material issue of fact. One item of evidence originally submitted was a TWC report showing violations occurring post filing. Judge Hall did not consider the reports, as they were not certified copies. Attached to their motion to reopen the evidence, the plaintiffs have attached certified copies of the TWC reports. Defendant knew about those reports and, therefore, cannot be unfairly prejudiced by this court's consideration of those reports. Plaintiffs have also submitted further evidence obtained after the initial summary judgment was rendered. Plaintiffs had requested such information from the defendant but had not received it at the time of responding to defendant's motion for summary judgment.

Because this court believes that plaintiffs did submit sufficient evidence initially to create a material issue of fact, and thus preclude summary judgment, the court does not see how defendant would be prejudiced by this court's consideration of the additional evidence. Furthermore, the equities weigh in favor of reopening the evidence.

CLEAN WATER ACT:

In order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," the Clean Water Act ("Act") makes unlawful the discharge of any pollutant into navigable waters except as authorized under specific sections of the Act. 33 U.S.C. § 1251(a), Section 402 of the Act establishes the National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1342. Under § 402, either the administrator of the EPA or a state which has established its own EPA-approved permit program may issue a permit allowing effluent discharges in accordance with specified conditions. 33 U.S.C. § 1342(b), (c).

The holder of a state permit is subject to enforcement action by both the EPA and the state for failure to comply with the permit's condition. 33 U.S.C. §§ 1319, 1342(b)(7). In addition, private citizens may bring civil actions against any person alleged to be in violation of a state permit if the federal or state agencies have not acted. 33 U.S.C. § 1365(a)(1). The Act allows the court in a citizen's suit to order injunctive relief and/or impose monetary penalties. 33 U.S.C. § 1365(a).

Defendant contends that plaintiffs do not have standing under § 505, as it was nei-

ther in violation of the Act nor was there a reasonable expectation that defendant would violate the Act in the future. Defendant claims that any violations were sporadic, unconnected and minuscule and thus do not support standing. Alternatively, defendant contends that plaintiffs' federal claim is moot. Defendant claims to have cured any discharge problem as evidenced by its over 90 per cent compliance since the time of filing suit.

## A. STANDING:

■ The doctrine of standing is based upon Article III of the United States Constitution, which limits the judicial power of the federal courts to resolution of actual cases and controversies. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In terms of its Article III requirement, "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his implication of federal court jurisdiction and to justify exercise of the court's remedial power on his behalf." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has explained that:

> [A]t an irreducible minimum, Article III requires the party who invokes the Court's authority to "show that he personally has suffered some actual or threatened injury as the result of the putative illegal conduct of the defendant," in that the injury "fairly can be traced to the alleged actions" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

As noted above, plaintiffs brought this action pursuant to § 505 of the Clean Water Act, which authorizes any "citizen" to commence a civil action on his or her own behalf against a person who is alleged to be in violation of the Act. In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Supreme Court found that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney,* 108 S.Ct. at 381. The Court made plain that the harm sought to be addressed by the citizen's suit provision of the Clean Water Act lies in the present or future, not in the past. *Id.* at 382.

A district court has subject matter jurisdiction over a citizen suit when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation. *Id.* at 385. Defendant can thereafter, through motion practice, contest the allegations made in the complaint and show that they are a sham. If defendant cannot show that the jurisdictional allegations are a sham, then "the case proceeds to trial on the merits where the plaintiff must *prove* the allegations in order to prevail." *Id.* at 386 (emphasis added).

A citizen plaintiff may prove ongoing violations in two ways:

1. By proving violations that continue on or after the date the complaint is filed; or

2. By adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.

*Sierra Club v. Union Oil Company,* 853 F.2d 667, 671 (9th Cir.1988); *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.,* 844 F.2d 170, 171–72 (4th Cir.1988). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Chesapeake Bay Foundation,* 844 F.2d at 171–72.

Plaintiffs filed their original complaint on September 8, 1988. Paragraph 10 of that complaint states that, "Plaintiff submits that defendant is in violation of effluent standards and limitations established for defendant pursuant to Title 33, Chapter 26 of the United States Code. Plaintiff seeks the enforcement of such standards and limitations by appropriate court order." This allegation is sufficient to invoke the

initial subject matter jurisdiction of the federal district court. Defendant thereupon contested the allegation set forth in the complaint when it filed its motion for summary judgment.[1]

There is no doubt that the City of Waskom was a past polluter. The City acknowledges the following parameter violations:

1. Chlorine residual, September 1988, March 1987, June 1986, November 1986, November 1985, October 1985, August 1985, June 1985.
2. Fecal Chloroform, June 1988, February 1987, June 1986, December 1985, September 1985, March 1985.
3. Flow, July 1989, January 1988, February 1988, March 1988, February 1987, December 1987.
4. Total suspended solids (TSS), January 1988, November 1986, June 1986, December 1985, October 1985, March 1985.

The City's discharge monitoring reports (DMR) show violations during these months. The key question for standing, however, is whether, *at the time suit was brought*, there was a reasonable likelihood that this past polluter would continue to pollute in the future. *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir.1989). Suit was filed in September 1988. Defendant violated its chlorine residual parameter that month.[2] The City had violated this parameter seven times from June 1985 to March 1987. Similarly, the City violated its flow parameter in July 1989. It had violated this parameter five times from February 1987 to March 1988. Furthermore, although the City did not report a total suspended solids violation in October 1988, TWC reports and William Gibson's deposition testimony raises a genuine issue of fact concerning the validity of defendant's measuring equipment.

Defendant has not met its burden of proving that plaintiffs' allegations are sham. In fact, given the standard enunciated in *Gwaltney*, plaintiffs have clearly met their burden of establishing ongoing violations or, in the alternative, a continuing likelihood of intermittent or sporadic violations entitling them to partial summary judgment on the issue of liability.

**B. MOOTNESS:**

■ Defendant urges that plaintiffs' claims have become moot, as defendant has reported over 95 per cent compliance with its NPEDS permits since the filing of this suit. Defendant bears the burden of proving mootness. In *Gwaltney*, the Supreme Court briefly discussed the mootness doctrine as it applies to the Clean Water Act citizen suit:

> [The defendant] also worries that our construction of § 505 would permit citizen-plaintiffs, if their allegations of ongoing noncompliance become false at some later point in the litigation because the defendant begins to comply with the Act, to continue nonetheless to press their suit to conclusion. According to petitioner, such a result would contravene both the prospective purpose of the citizen suit provision and the "case or controversy" requirement of Article III. Longstanding principles of mootness, however, prevent the maintenance of suit when "there is no reasonable expectation that the wrong will be repeated." In seeking to have a case dismissed as moot, however, *the defendant's burden "is a heavy one"* [emphasis added]. The defendant must demonstrate that it is "*absolutely clear* that the allegedly

---

1. Although Judge Hall nowhere states specifically his basis for granting defendant's summary judgment, other than that plaintiffs' claims are groundless, he must have found that the past violations of the waste water treatment facility of the City of Waskom were insufficient to give the plaintiffs standing under the Act. Judge Hall ruled that these intermittent and sporadic violations do not rise to a level which would lead one to believe that defendant would continue to violate the Act.

2. Defendant argues that it exceeded the permit by only .001 and, thus, such violation should not operate to provide grounds for an ongoing violation. The Act, however, does not provide for a *de minimis* exception. *Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480, 1491 (9th Cir.1987), *vacated on other grounds* 485 U.S. 931, 108 S.Ct. 1102, 99 L.Ed.2d 264 (1988), *reinstated* 853 F.2d 667 (9th Cir.1988).

wrongful behavior could not reasonably be expected to recur" [emphasis in original]. Mootness doctrines must protect defendants from the maintenance of suits under the Clean Air Act [sic] based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanctions by predictable "protestations of repentance and through reform."

*Gwaltney*, 108 S.Ct. at 386 (citations omitted). Thus the City of Waskom has the heavy burden of proving that there is no reasonable expectation that they will violate their parameters again. Defendant has not met its burden.

A defendant's showing of present compliance does not dispose of the matter. One of the "longstanding principles of mootness" is that voluntary discontinuance of the allegedly illegal practice does not make a case moot. *United States v. W.T. Grant Company*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Such compliance serves merely as evidence on the issue of whether it is absolutely clear that the wrongful conduct could not be reasonably expected to recur.

Furthermore, should defendant prove at trial that it is absolutely clear that it could not reasonably be expected to violate its parameters in the future, such a finding would only moot injunctive relief, and not the imposition of civil penalties. *See* discussion in Benson, *Clean Water Act Citizen Suits After Gwaltney: Applying Mootness Principles in Private Enforcement Action*, 4 Journal of Land Use & Environmental Law 143, 160–65 (1988). "By approving civil penalties in citizen suits, Congress gave private enforcers the power to vindicate public rights by seeking sanctions against violators. These sanctions do not directly benefit the plaintiffs. Citizens authority to pursue penalties for public benefit confirms their role as enforcers of public rights. Because citizen plaintiffs, under § 505, are private attorneys general enforcing public statutory rights, their claims for civil penalties must survive even if their claims for injunctive relief become moot." *Id.* at 162.

Therefore, plaintiffs' suit cannot be dismissed as moot. At trial, defendant can argue mootness as to injunctive relief but not as to civil penalties. Furthermore, plaintiffs have only established standing as to chlorine residual and flow parameters. At trial, plaintiffs will be allowed to attempt to establish standing as to the remaining parameters. In order that past violations be determined to be ongoing in nature, there must be some connection between violations occurring after the suit was filed and violations occurring prior to the time suit was filed.

GROUNDLESS:

Although neither party had raised the issue in their briefs on defendant's motion for summary judgment, Judge Hall found in his order granting defendant's motion for summary judgment that the plaintiffs' complaint was groundless and, therefore, awarded the defendant all costs of litigation, including reasonable attorney's and expert witness fees under 33 U.S.C. § 1365(d). The basis for this decision appears to be the following:

Defendant has filed with the court verified copies of the minutes of the board of directors meetings of State Line Fishing & Hunting Club, Inc. These documents show that the club has had a problem with excess moss and algae in the State Line Lake for nearly 30 years. Suspended solids include both organic and inorganic matter. Minutes for meetings during the years 1961, 1963, 1965, 1969, 1970, 1971, 1977, 1978, 1979, 1982, 1984 and 1986 contain reference to the club's efforts to control moss growth. In the minutes for July 15, 1982, reference is made to the possibility of deepening the lake, which evidences an understanding that shallow lakes are particularly susceptible to a moss problem. The minutes of July 16, 1984 make reference to the possibility that camp owners' septic tanks, not being in compliance with Parish standards, could be causing the moss problem. This background information, together with the few sporadic violations by the City which are relied on

by plaintiffs, lead the court to the conclusion that plaintiffs' claim was groundless.

Amended opinion and order at 7.

Because this court has denied defendant's motion for summary judgment, defendant is not entitled to attorney's fees. Not only is plaintiffs' claim not groundless, but they have established liability on the chlorine residual and flow parameters and are entitled to partial summary judgment as to the City's liability for civil penalties for violation of those parameters.

STATE LAW CLAIMS:

■ Plaintiffs contend that the existence and operation of the City's waste water treatment facility constitutes a common law nuisance under Texas law and, further, that the City of Waskom has operated such facility, and continues to operate such facility, in a negligent and intentionally wrongful manner. Plaintiffs seek injunctive relief tailored to remedy future acts of pollution and contamination of State Line Lake and the deterioration of the lake resulting from the pollution. Plaintiffs also seek money damages in an amount sufficient to remedy those conditions caused by the pollution and to compensate plaintiffs for the loss of use of State Line Lake and loss of use of the improvements or, in the alternative, the deterioration in the market value of their real estate interests in the lake and improvements. To the extent allowed by law, plaintiffs also seek further general damages relating to their individual losses, as well as recovery of attorney's fees, witness fees, prejudgment interests and the costs of court. The state law of the source state (Texas) and not the affected state (Louisiana) applies to determine whether defendant's discharge of effluents into State Line Lake constitutes a nuisance. *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 814–15, 93 L.Ed.2d 883 (1987).

Defendant contends that plaintiffs' claims are barred by the applicable two-year statute of limitations. Neither party disputes that the statute of limitations for injury to property is two years; the dispute surrounds the time from which the statute

begins to run. Defendant contends that plaintiffs' damages are permanent in nature and, therefore, the statute began to run when damage first began to appear on the lake, some 20 years ago. The plaintiffs contend that their damages are temporary in nature and, therefore, their suit is only barred as it relates to damages suffered prior to two years before the lawsuit was filed.

Defendant also contends that it is entitled to governmental and sovereign immunity for the acts of which plaintiffs complain. Defendant claims that because the operation of a sewage treatment facility is a governmental function, it is absolutely immune from any liability for negligent operation of such plant. Judge Hall ruled that plaintiffs' injuries were permanent in nature and, thus, barred by the applicable statute of limitations.

A. PERMANENT VERSUS TEMPORARY INJURY:

■ It is well settled in Texas law that where the nuisance complained of is permanent in nature, the statute of limitations bars any action if it is not brought within two years of the first actionable injury. On the other hand, where the nuisance complained of is temporary in nature, the statute of limitations bars only those events which occurred more than two years prior to the filing of the lawsuit and an action may be brought for damages accrued by the time of trial and occurring within two years of the filing of the lawsuit. *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681 (Tex.1975), *ovrld on other grounds* by *Burk Royalty v. Walls,* 616 S.W.2d 911 (Tex.1981); *see also Gulf Coast Sailboats, Inc. v. McGuire,* 616 S.W.2d 385 (Tex.Civ.App.— Houston [14th Dist.] 1981, writ ref. n.r.e.).

■ A temporary nuisance is one in which the interference with the use and enjoyment of the premises "is not continuous but is sporadic and contingent upon some irregular force such as rain." *Atlas,* 524 S.W.2d at 685. In *Gulf Coast,* the Texas Court of Appeals affirmed a jury's finding of temporary damage. 616 S.W.2d

385. Plaintiffs complained that odors and particles produced from defendant's fiberglass fabricating operations drifted onto their property. The record showed that the presence of odors and particles depended upon the direction of the wind and other atmospheric conditions. Furthermore, it was usually noticeable about three times a week during most of the year, and somewhat more often during the summer months.

The Texas Supreme Court explained in *Bayouth v. Lion Oil Company*, 671 S.W.2d 867, 868 (Tex.1984), the different characteristics of permanent and temporary injuries:

> Permanent injuries to land result from an activity of such character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent or recurrent. Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some sudden irregular force such as rain.

Another characteristic of a temporary injury which the Supreme Court of Texas has acknowledged is the ability of a court of equity to enjoin the injury-causing activity. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). Defendant contends that the City cannot be enjoined from operating its waste water treatment facility and, therefore, the damage must be characterized as permanent. Defendant misreads *Kraft*. *Kraft* spoke only of a "characteristic" of a temporary injury, not the converse that inability of a court to enjoin would make the injury permanent. The inability of a court of equity to enjoin successfully an injury-causing activity is only a characteristic of a temporary injury and the unavailability of injunction does not necessarily change a temporary injury to a permanent one. *City of Odessa v. Bell*, 787 S.W.2d 525 (Tex.App.—El Paso 1990).

In this case, plaintiffs have submitted sufficient evidence to raise a genuine issue of material fact concerning the characterization of their injury as either temporary or permanent. All of the plaintiffs testified in their depositions that the moss on the lake seemed to disappear during the winter months and reappear during the summer months. Furthermore, Mr. Williams' deposition testimony creates the possibility that excessive rainfall would cause more effluent to flow into the lake than were normally discharged. This creates an issue of fact as to whether the injuries complained of were temporary, sporadic and recurrent depending upon uncontrolled factors such as rainfall and heat. Plaintiffs also met their burden of creating a genuine issue of fact as to causation by submitting the deposition testimony of Dr. Robert Kalinsky. Dr. Kalinsky expressed the opinion that the increased vegetation in State Line Lake is caused 80 per cent by effluents discharged from defendant's waste water treatment facility. Furthermore, Dr. Kalinsky expressed the opinion that if the City of Waskom were to change the way in which it discharged its effluent, the problem could be abated. The court reminds defendant that merely because this court may not be able to enjoin the defendant from discharging the effluents in the particular manner in which it has been doing, such does not preclude a finding of temporary injury. Such is only a factor to be considered in characterizing the injury as either temporary or permanent. The City's motion for summary judgment on the statute of limitation issue is DENIED.

## B. IMMUNITY OF THE CITY:

Texas courts have consistently held that operation and maintenance of a sanitary sewer is a governmental function. *Callaway v. City of Odessa*, 602 S.W.2d 330 (Tex.App.—El Paso 1980, no writ). Thus, the City enjoys sovereign immunity with respect to operation of its waste water facility except to the extent that the Texas Tort Claims Act waives that immunity. Tex.Civ.Prac. & Rem.Code § 101.001–101.109.

The City is not immune from the imposition of damages for nuisance. "A city-owned [sewage treatment] plant that emits smoke or *odors or dumps polluted*

water or refuse into another's land is a nuisance." *City of Uvalde v. Crow,* 713 S.W.2d 154, 157 (Tex.App.—Texarkana 1986); *see also City of Abilene v. Downs,* 367 S.W.2d 153 (Tex.1963); *City of Fort Worth v. Crawford,* 74 Tex. 404, 12 S.W. 52 (1889). A municipality is liable for damages caused by the maintenance of a nuisance, even though the municipality is engaged in the exercise of a governmental function. In order to create liability, however, the nuisance must in some way constitute an unlawful invasion of the rights of others. *Stein v. Highland Park Independent School Dist.,* 540 S.W.2d 551 (Tex. Civ.App.—Dallas 1976, writ ref. n.r.e.); *Gotcher v. City of Farmersville,* 137 Tex. 12, 151 S.W.2d 565, 566 (Tex.1941). The City admits that it is intentionally discharging effluents into State Line Lake. Thus, the City's motion for summary judgment on plaintiffs' nuisance claim is DENIED.

■ The City also contends that it is immune from any liability for negligent operation of its waste water treatment facility. The Texas Tort Claims Act provides that the government is liable for damages to property when such damages result from the negligent operation and use of motor-driven vehicles or motor-driven equipment. Tex.Civ.Prac. & Rem.Code § 101.021(1)(A); *Wheat v. Texas Department of Corrections,* 715 S.W.2d 362, 363 (Tex.App.—Houston [1st Dist.] 1986, writ ref. n.r.e.). Complainant contends that this is a case involving damage because of motor-driven equipment. Deposition testimony of Mr. Williams establishes that, in certain circumstances, hydraulic overflow created a greater amount of discharge of effluents into State Line Lake than would otherwise have been discharged. Plaintiffs are not contending, however, that it was certain increases in effluents that caused the damage but the fact that effluents were discharged. Therefore, the fact that certain motor-driven equipment created a greater amount of effluents being discharged does not effect the cause of action. Defendants' motion for summary judgment on plaintiffs' claim that defendant is liable for negligent operation of its waste water facility is GRANTED.

Neither party specifically argued the City's liability for trespass, thus this court will not address this claim.

## C. AVAILABILITY OF INJUNCTIVE RELIEF:

■ In order to receive injunctive relief, plaintiffs' must show that they do not have an adequate remedy at law. *Hogue v. City of Bowie,* 209 S.W.2d 807, 809 (Tex. Civ.App.—Fort Worth 1948, writ ref. n.r. e.). Texas has held that permanent public improvements are not subject to abatement. *City of Dallas v. Winans,* 262 S.W.2d 256, 259 (Tex.Civ.App.—Dallas 1953, no writ). "The construction, demolition *and alteration of public improvements* are matters of policy which come within the discretionary powers of the City Council." 262 S.W.2d at 259. Plaintiffs are not asking that the water treatment facility itself be altered, but merely the method for disposing of effluents be changed. Nevertheless, this appears to be within the discretion of the City managers. Therefore, plaintiffs are not entitled to injunctive relief, but are relegated to recovery for temporary damages occurring since the time of filing suit and those which had accrued from a period two years prior to filing of suit.

Defendant's motion for summary judgment on the state law claims is GRANTED IN PART AND DENIED IN PART. Plaintiffs have met their burden concerning characterizing the injury as either permanent or temporary; nevertheless, plaintiffs are not entitled to injunctive relief and are not entitled to damages for negligent operation of the waste water treatment facility. Plaintiffs may only recover damages if they prove that the City of Waskom's operation of the waste water treatment facility constitutes a nuisance as defined by Texas law. If the plaintiffs are able to establish nuisance, then they will be relegated to recovery of money damages for their temporary damages.

REMAINING MOTIONS:

Three motions remain. First, defendant has filed a motion for cost of litigation. Because this court denied defendant's motion for summary judgment under the Clean Water Act and held that plaintiffs' claims are not groundless, defendant is no longer entitled to attorney's fees. Defendant's motion for costs is DENIED.

Similarly, defendant's motion to strike the affidavit of attorney William M. Huffman is DENIED AS MOOT. Plaintiffs submitted such affidavit in support of their opposition to defendant's motion for costs. Because this court has not considered defendant's motion for costs, it will not consider plaintiffs' opposition.

Finally, plaintiffs filed a motion to vacate findings of fact in Judge Hall's recusal order. Such findings do not relate to the merits of plaintiffs' case but to the propriety of plaintiffs' counsel's conduct. Although plaintiffs had designated Mr. Huffman long before Judge Hall ruled on defendant's motion for summary judgment and Judge Hall implicitly acknowledged such designation by approving the Pretrial order, this court cannot vacate the findings. Mr. Huffman was designated as an expert on reasonable and necessary attorney's fees, yet his affidavit deals with his legal opinion on the merits of plaintiffs' case. Such legal opinion invades the province of the court who is the sole judge of the law. The findings made in the recusal order are particularly sensitive. Judge Hall has dealt with these litigants and has an appreciation for circumstances surrounding the filings in this case that this court lacks. This court must, therefore, DENY plaintiffs' motion to vacate findings of fact in the recusal order.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

THUS DONE AND SIGNED.

ORDER

For the reasons assigned in the foregoing Memorandum Ruling,

IT IS ORDERED that plaintiffs' motion for reconsideration is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on the Federal Water Pollution Control Act claim is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment on the issue of liability of the City for violation of the Federal Water Pollution Control Act is GRANTED AS TO CHLORINE RESIDUAL AND FLOW PARAMETERS.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on whether plaintiffs' state law claims are barred by the applicable statute of limitations is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiffs' nuisance claim is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on plaintiffs' negligence claim is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for costs is DENIED.

IT IS FURTHER ORDERED that defendant's motion to strike William M. Huffman's affidavit is DENIED AS MOOT.

IT IS FURTHER ORDERED that plaintiffs' motion to vacate the findings of fact in the recusal order is DENIED.

DATED AND SIGNED at Shreveport, Louisiana, this 2nd day of January, 1991.