**LOUMAR, INC., Plaintiff-Appellant,**

v.

**Charles SMITH and Michael J. Smith, individually and d/b/a S & S Supply, Defendants-Appellees.**

**No. 82–1303**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1983.

---

Fanning, Harper, Wilson, Martinson & Fanning, Harlan Harper, Jr., Dallas, Tex., for plaintiff-appellant.

Berman, Fichtner & Mitchell, Toby L. Gerber, Dallas, Tex., for Charles Smith, et al.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In the time that has been spent by the lawyers for a Texas corporation in efforts to assert in a Texas federal court the corporation's diversity-based claims against Maryland residents, the case could doubtless have been brought to a conclusion. The parties having in the course of two lawsuits gained nothing but experience, we affirm dismissal of this action for want of jurisdiction.

The jurisdictional facts are quickly stated. Loumar, Inc. is a Texas corporation engaged in the sale of aircraft parts to federal agencies. To fill a successful bid with the Coast Guard for Sikorsky hub assemblies, Loumar ordered the parts from Charles and Michael Smith, who are both Maryland residents, doing business as S & S Supply, a partnership. The transaction began with a telephone call placed by Loumar from Texas to S & S in Maryland. S & S, whose sole place of business is in Maryland, shipped the hub assemblies to Loumar by common carrier F.O.B. Maryland in January 1980, agreeing to pay Loumar one-half the transportation cost. Loumar received the assemblies in Texas and reshipped them to the Coast Guard. A few months later, the Coast Guard rejected the parts on the ground that they were not new.[1] There is no evidence that either S & S or the Smiths had a place of business or had any other activities in Texas. Loumar asserts in its brief that interrogatories in the first dismissal action established that S & S "first solicited business in Texas and in other states by advertising in nationally circulated trade magazines, some or all of which may have been circulated in the state of Texas." Loumar had ordered merchandise from S & S five times before and the total price of the six purchases exceeded $40,000. One of the Smiths owns a tract of land in Texas. There is no evidence that S & S has an agent in Texas, has any regular distribution arrangements in Texas, or regularly ships merchandise to Texas.

Loumar nonetheless sued the Smith brothers and S & S (together referred to as the Smiths) in federal district court for the Northern District of Texas on the basis of diversity, alleging deceptive trade practices, breach of contract, and fraud. The Smiths moved to dismiss but Judge Barefoot Sanders denied the motion, finding that the Smiths were amenable to suit in Texas.

Things had apparently moved too fast for Loumar, however, for three days before the

---

1. Apparently the parts have not been returned and the question whether they conform to bid requirements is still pending.

case was set for trial, it sought a continuance. This denied, Loumar moved on the same day for a voluntary nonsuit. Judge Sanders, however, conditioned the dismissal on Loumar's agreement that suit be reinstated only in a state or federal court in Maryland. Two weeks later, he deleted that requirement.

The Smiths then filed suit in Maryland state court seeking declaratory relief and damages for Loumar's alleged breach of contract. That suit is still pending.

Loumar then returned to the Texas federal district court and reasserted its original claims in a new suit. The new suit was assigned to Judge Robert Hill rather than to Judge Sanders. The Smiths moved to dismiss for want of personal jurisdiction and Judge Hill granted the motion. He later denied Loumar's motion to transfer the action to federal district court in Maryland.

■ Loumar first asserts that Judge Sanders' ruling denying the Smiths' motion to dismiss for lack of *in personam* jurisdiction became the "law of the case," binding Judge Hill's resolution of the Smiths' subsequent motion. The law of the case doctrine is closely related to the principle of *res judicata.* The latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.[2]

■ Both rules serve to enhance judicial efficiency and to assure the finality of judicial determinations. *See Morrow v. Dillard,* 580 F.2d 1284, 1289–91 (5th Cir.1978). Res judicata, however, is categoric and requires that respect be accorded the prior judgment,[3] while the law of the case doctrine is merely a *"rule of practice,* based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v.*

*United States Smelting Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750, 760–61 (1950) (emphasis added); *see* 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 408 (law of the case doctrine is not an inexorable command). The rationale on which the doctrine is based is the same as that for *stare decisis:* a court will follow a ruling previously made unless the prior ruling was erroneous, is no longer sound, or would work an injustice. 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404[1] (1982); *see* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478, at 790 (1981). Thus, when a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 788, 794–95 (1981).

■ The law of the case doctrine is not, however, a barrier to correction of judicial error. It is a rule of convenience and utility and yields to adequate reason, for the predecessor judge could always have reconsidered his initial decision so long as the case remained in his court. Therefore, his decision should not bind a successor with jurisprudential straps stronger than those that compel him to adhere to an opinion once rendered. *See Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 837–38 (5th Cir.1982).

Justice Lummus' classic statement of the policy in *Peterson v. Hopson,* 306 Mass. 597, 603, 29 N.E.2d 140, 144 (1940), bears repeating here: "A judge should hesitate to undo his own work. Still more should he hesitate to undo the work of another judge. But until final judgment or decree there is no lack of power, and occasionally the power may properly be exercised." (citations omitted).

---

**2.** Res judicata is inapplicable unless the earlier case proceeded to final judgment on the merits. *See Bradford v. Bronner,* 665 F.2d 680, 682 (5th Cir.1982); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 404–05 (1982).

**3.** *See* 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 404–08 (law of the case directs discretion; res judicata supersedes discretion and compels judgment).

■ So Judge Hill, as the successor judge, had discretion to review the work that was done before the case came to him, and we review his decision only for abuse of his necessarily bountiful discretion. *Greyhound Computer Corp. v. International Business Machines Corp.,* 559 F.2d 488, 508 (9th Cir.1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978).

We find no abuse of discretion here. Judge Sanders had already once reconsidered his own decision forbidding that litigation be resumed in Texas. That earlier condition was as much the law of the case as the removal of the condition. If the facts presented to Judge Hill truly showed a lack of jurisdiction, it would have been sheer waste for him to permit a trial in Texas and await reversal by this court for want of jurisdiction.

We turn then to the real question, whether the Smiths were subject to Texas jurisdiction. This turns first on the reach of the Texas long-arm statute, which stretches to the full extent that a state may assert jurisdiction "consistent with the requirements of due process of law under the United States Constitution." *Hall v. Helicopteros Nacionales de Colombia, S.A.,* 638 S.W.2d 870, 872 (Tex.1982). *Hall,* a recent decision explicating the reach of the Texas statute, applies to pending cases. *Placid Investments, Ltd. v. Girard Trust Bank,* 689 F.2d 1218 (5th Cir.1982).

■ The due process requirements set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1941) and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) are familiar. As Judge Hill found, the Smiths had minimal contacts with Texas. They did not reach out to Loumar in Texas for business; Loumar communicated by telephone with them in Maryland about the possibility of supplying hub assemblies. The order was mailed to Maryland. The Smiths do not maintain an office, agent, or place of business in Texas. The goods were shipped from Maryland, and payment was to be made there. The Smiths' shipment to Texas of an order of hub assemblies was, as

Judge Hill said, adding a legal to his factual conclusion "an isolated transaction, initiated by Loumar, insufficient to meet the requirements of due process."

The factual findings are not clearly erroneous, so the legal conclusion is sound. *See Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) (use of interstate facilities and payment and delivery within forum state are ancillary factors and cannot alone provide minimum contacts). The district judge also had adequate factual basis to reject the claim that he could exercise jurisdiction on the theory that the Smiths had introduced an article into the stream of commerce because the Smiths were not "utilizing a marketing distribution chain for the multi-state distribution of goods." *See Hendrickson v. Reg O Co.,* 657 F.2d 9, 15 (3d Cir.1981).

■ The only evidence that the Smiths might have subjected themselves to Texas jurisdiction consists of a single answer to an interrogatory in the prior suit that recites:

Defendants have not solicited any business within the State of Texas, other than to place advertisements in nationally circulated publications, some or all of which may have been circulated in the State of Texas.

There was nothing in the record demonstrating which publications the ads ran in; what products were advertised; whether and how widely the publications were circulated in Texas; or the amount of business obtained from the advertisements.

Advertising in nationally-circulated trade publications may be sufficient to constitute a "purposeful availment" of the facilities of a state in which the publication circulates. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court stated, as one of its reasons for holding that the due process clause did not permit Oklahoma to assert personal jurisdiction over a nonresident defendant, "[The defendant] solicit[s] no business [in Oklahoma] either through salespersons or through advertising reasonably calculated to reach the State." *Id.* at

295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. The Court did not hold, however, that advertising reasonably calculated to reach the state would, without more, permit assertion of personal jurisdiction over the advertiser.

In *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434 (Tex.1982), the Texas Supreme Court held that assertion of *in personam* jurisdiction over a nonresident defendant which advertised in national publications circulated in Texas and in Texas telephone directories does not offend the due process clause. The court held that the defendant's "decision to advertise in Texas telephone directories, *in and of itself,* is a sufficiently purposeful act [to satisfy due process requirements]." *Id.* at 436 (emphasis added).

There is no evidence that the Smiths advertised in Texas telephone directories or in other local publications. Their sporadic contacts with Loumar would not of themselves have lead the Smiths to anticipate, under the *Woodson* test, "being haled into court" in Texas for breach of a contract to supply hub assemblies from Maryland. 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. We decline in the absence of record evidence to speculate about whether the Smiths advertised in publications circulating in Texas; whether they did so frequently, regularly, or merely occasionally; and, if only occasionally, what kind of occasional advertising by a firm in a publication of wide circulation would be sufficient to confer jurisdiction.

In determining the limits of state exercise of jurisdiction over nonresidents, the ultimate criterion is fairness. It would be manifestly unfair to force the Smiths to come to Texas to litigate over the quality of the hub assemblies shipped from Maryland under the facts here presented.

Trial on the merits would likely have consumed no more work than the travail dissipated in feckless squabbling about the forum in which the parties will eventually have their claim determined. This waste results both from the efforts of a litigant to try its case in a forum closer to home and from the forum-shopping possibilities perpetuated by the portion of the federal diversity statute that permits a resident plaintiff to resort to a federal court merely for tactical advantage. Such a resident has none of the justification of the nonresident who fears the home court advantage that might be accorded his resident adversary in a court of his own state.

And so we come to an end of this short and inconclusive detour through Texas courts by a litigant who has at least two other forums: Maryland state court and a federal district court in Maryland.

For these reasons, the judgment is AFFIRMED.