## HOUSTON TECHNICAL CERAMICS, INC., Plaintiff,

v.

## IWAO JIKI KOGYO CO., LTD., Defendant.

Civ. A. No. H–88–1631.

United States District Court, S.D. Texas, Houston Division.

April 2, 1990.

Robert A. Chaffin, The Chaffin Law Firm, Houston, Tex., for plaintiff.

D. Dudley Oldham, Fulbright & Jaworski, Houston, Tex., for defendant.

## ORDER

HOYT, District Judge.

Pending before the Court is Iwao Jiki Kogyo Co., Ltd.'s motion to reconsider order entered November 27, 1989 or in the alternative, motion to amend order of November 27, 1989 to permit immediate appeal. Also pending is Iwao Jiki Kogyo Co., Ltd.'s motion to dismiss for lack of personal jurisdiction. The Court has considered these motions, any responses thereto, the record on file, and the applicable law.

## FACTS

Iwao Jiki Kogyo Co., Ltd. ("IJK"), a Japanese corporation (and the defendant in this case), has filed a motion (Instrument #52) to reconsider the Court's order (Instrument #46) declaring moot IJK's motion to dismiss based on lack of personal jurisdiction (Instrument #4).

According to Plaintiff's Original Complaint (filed December 18, 1987) the plaintiff, Houston Technical Ceramics, Inc. ("HTC"), entered into contracts with the defendant, for IJK to supply HTC with alumina ceramic rings (that were to be resold to other Texas corporations). HTC is alleging that the alumina rings delivered to HTC by IJK were defective and did not meet agreed specifications. HTC also sued Nippon Carbide ("Nippon") as the manufacturer of all or a substantial portion of the alumina rings.

This file has 70 instruments so far. The filings relevant to the motion to reconsider are as follows. IJK filed a motion to dismiss for lack of personal jurisdiction on March 11, 1988 (Instrument #4). Nippon filed a motion to dismiss for lack of personal jurisdiction on July 13, 1988 (Instrument #22). An order was entered on July 29, 1988 (Instrument #25) granting an agreed motion (Instrument #24) to dismiss the claims against Nippon based on lack of personal jurisdiction. IJK filed a "motion to dismiss or, alternatively, plea in abatement" on August 1, 1989 (Instrument #28) based on the alleged forfeiture of HTC's corporate charter by the Secretary of State of Texas.

An order was entered on October 16, 1989 (Instrument #32) denying IJK's "motion to dismiss or, alternatively, pleas in abatement." An order was entered on November 27, 1989 (Instrument #46) that declared IJK's motion to dismiss for lack of personal jurisdiction (Instrument #4) Moot.

Facts Not in Dispute

The following facts are set out (and/or alleged) in the pleadings and affidavits and are not contradicted by either party:

(1) In November, 1983 an HTC representative was introduced to representatives of IJK in Japan. (Affidavit of IJK, Instr. #8 at 1).

(2) In June, 1984 HTC wrote a letter to IJK in Japan, inquiring whether IJK could manufacture alumina rings for HTC. (Affidavit of IJK, Instr. #8 at 2).

(3) Hakaru Iwao, a representative of IJK, "visited HTC in March of 1985 for the purpose of soliciting alumina ceramic ring sales as well as other industrial ceramic products." English language corporate brochures and promotional literature were provided by IHK to HTC." "The sales call paid by Mr. Iwao was crucial to HTC's decision to contract with IJK." (Affidavit of HTC, Instr. #14 at 4).

(4) IJK produced a sample ring and shipped the sample to HTC in Texas. (Affidavit of IJK, Instr. #8 at 2).

(5) HTC ordered alumina rings by submitting an HTC purchase order in June, 1985 to IJK in Japan. (Affidavit of IJK, Instr. #8 at 2).

(6) A second purchase order was executed in November, 1985. (Affidavit of HTC, Instr. #14 at 2).

(7) Payment was to be made in Japan. (Affidavit of IJK, Instr. #8 at 2).

(8) IJK manufactured the alumina rings in Japan. (Affidavit of IJK, Instr. #8 at 2).

(9) The first shipment of alumina rings to HTC was made in November, 1985. (Affidavit of IJK, Instr. #8 at 2).

(10) A second shipment was made in January, 1986. (Affidavit of IJK, Instr. #8 at 2).

(11) Four more shipments were subsequently made. (Affidavit of HTC, Instr. #14 at 3).

(12) IJK knew that the alumina rings were to be used by Texas companies as a component part for vacuum power tubes that were being manufactured in the State of Texas. (Affidavit of HTC, Instr. #14 at 3).

(13) In January, 1986 Mr. Hiroaki Ukon of IJK went to Houston and discussed with HTC representatives the possibility of IJK manufacturing larger alumina rings for HTC. (Affidavit of IJK, Instr. #8 at 2).

(14) "Mr. Ukon described extensive business that IJK was involved in the United States and emphasized that IJK was attempting to become entrenched in United States Markets for advanced technical ceramics." (Affidavit of HTC, Instr. #14 at 4).

(15) "It was anticipated by both IJK and HTC that the purchase of alumina ceramic rings would continue over at least five years." (*Id.* at 5).

(16) In February, 1986, HTC complained to IJK about the fitness of the alumina rings and demanded that no further shipments be made. (Affidavit of IJK, Instr. #8 at 2).

(17) On July 18, 1986, representatives of HTC (including Mr. Lazzara and Mr. Tachibana) met with representatives of IJK in Japan to discuss the dispute between HTC and IJK over the alumina rings.

(18) "IJK has been doing business in other areas of the United States. Specifically, IJK has been selling porcelain tile to distributors in Pennsylvania, Connecticut, Maine, Washington, Hawaii, and California," producing approximately $1,080,000.00 of income. (HTC supplemental response to IJK's motions to dismiss, Instr. #44 at 3).

(19) It was IJK's intention to establish and maintain a long term presence in Texas as a manufacturer of advanced technical ceramics. The IJK/HTC contracts were not intended as isolated transactions. (Affidavit of HTC, Instr. #14 at 5).

## ISSUES

(1) Has IJK's motion to dismiss for lack of personal jurisdiction become moot?

(2) If the motion is not moot, does this Court have personal jurisdiction over the defendant, IJK.

## PRECEDENT

In IJK's motion for reconsideration, IJK argues that IJK's motion to dismiss for lack of personal jurisdiction should not have been declared moot. This assertion is correct.

To establish [personal] jurisdiction in a diversity case, such as this, the plaintiff must satisfy both (1) the forum state's long arm statute; and (2) the fourteenth amendment's due process requirements. These two steps collapse into one for our purposes because the Texas Supreme Court has established that the Texas Long-arm Statute ... reaches as far as the federal constitutional requirements of due process will permit.

*Irving v. Owens–Corning Fiberglas,* 864 F.2d 383, 385 (5th Cir.1989); *Bullion v. Gillespie,* 895 F.2d 213, 215–16 (5th Cir. 1990); *see also WNS, Inc. v. Farrow,* 884 F.2d 200, 202 (5th Cir.1989); *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex.1985).

In order for federal courts to exercise personal jurisdiction over a nonresident defendant, the Court must conclude that:

(1) the defendant has purposefully established minimum contacts with the forum state, such that he should reasonably anticipate being haled into court in the forum state, and

(2) entertainment of the suit against the nonresident would not offend traditional notions of fair play and substantial justice.

*See Bullion* at 216; *Growden v. Ed Bowlin and Assoc.*, 733 F.2d 1149, 1151 (5th Cir.1984).

The first (minimum contacts) prong may be met incident to a federal court's "general" or "specific" jurisdiction. General jurisdiction is invoked where the nonresident defendant maintains "continuous and systematic" contacts with the forum state such that a claim can be maintained which does not arise out of the contacts with the forum. Specific jurisdiction is invoked when the claim asserted arises out of or is related to the contacts the defendant made with the forum state. Fewer contacts are required for the Court's exercise of specific jurisdiction. It is well settled that specific jurisdiction may arise without the nonresident defendants ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum. *Bullion* at 216. However, jurisdiction is improper if grounded on the unilateral activity of the plaintiff. *Id.; see also Scullin Steel v. National Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir.1982) (seller of steel castings suing non-resident buyer for breach of contract).

For the second (fairness) prong to be met, prosecution of the action in the forum state must not be unreasonable or unfair. *Bullion* at 216–17. This fairness prong requires a federal court to consider:

(1) the burden upon the nonresident defendant;

(2) the interests of the forum state;

(3) the plaintiff's interest in securing relief;

(4) the interstate judicial system's interest is obtaining the most efficient resolution of controversies; and

(5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 216–17 n. 5; *see also Irving* at 387.

The plaintiff, HTC, has the burden of establishing contacts by IJK sufficient to constitute a *prima facie* case of personal jurisdiction. *See Bullion* at 216–17. In this regard, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.; see also WNS, Inc.* at 203. The allegations and affidavit evidence which are uncontroverted are set out under the "FACTS" section of this memo. These facts alone should support the exercise of specific personal jurisdiction.

The defendant relies primarily on the case of *Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir.1983). The *Loumar* case arose out of a single sales transaction. The plaintiff (a Texas corporation that was engaged in the sale of aircraft parts to federal agencies) purchased allegedly defective aircraft parts from the defendant (a Maryland corporation) via mail order. Subsequently, on resale, the parts were rejected by the Coast Guard causing economic loss to the plaintiffs. Although, the plaintiff had ordered merchandise from the defendant five times before, the Fifth Circuit affirmed the dismissal of the case for lack of personal jurisdiction. The Fifth Circuit apparently held that the contacts were insufficient under both the minimum contacts prong and the fairness prong for the exercise of specific jurisdiction.

The defendant in our case, IJK, has more contacts with Texas than the Maryland corporation in *Loumar* and, therefore, this case is distinguishable from *Loumar*.

### A. *The Minimum Contacts Prong*

The defendant in *Loumar* did not solicit business in Texas (including business from the plaintiff) except for advertisements in nationally circulated publications. In our

case, IJK visited Texas twice to solicit HTC's business as well as, later, to service its contracts with HTC. IJK sent a sample ring to HTC in Texas. Furthermore, the basis for the suit did not center around a single transaction as in *Loumar*. HTC contracted with IJK for a series of shipments to be made for a period in excess of one year. In addition, IJK knew that its parts would be sold to and used by as component parts Texas companies. IJK reached out to solicit further Texas business and intended to maintain a long term market in Texas for its products. Therefore, IJK had more contacts with Texas regarding the transaction at issue than the Maryland corporation in *Loumar* such that IJK should reasonably anticipate being haled into court in Texas. In other words, the transaction between IJK and HTC was more substantial than the single mail order transaction in *Loumar* and IJK reached out to Texas more significantly than did the Maryland corporation in *Loumar*.

### B. *The Fairness Prong*

In order for the Court to exercise jurisdiction, the fairness prong must also be met. For the reasons set forth below exercise of personal jurisdiction over IJK would not offend traditional notions of fair play and substantial justice. The last two factors (four and five) of the fairness prong (set out previously) are apparently inapplicable to an alien corporation such as IJK. Factors two and three both point to the exercise of personal jurisdiction over IJK.

First, as mentioned previously the transactions between IJK and HTC were more significant than the few isolated single mail order transactions between the plaintiff and the Maryland corporation in *Loumar*. Second, (as to the third factor) the plaintiff is a small business with its only location in Houston and is not financially capable of pursuing this litigation in Japan. (see Affidavit of HTC, Instr. #14 at 6). Third, (as

to the second factor) the resulting potential financial damage to Texas business is far greater than that in *Loumar*, therefore, giving Texas a greater interest in having this case litigated in Texas.[1] Lastly, (as to the first factor) it seems there would be less of a burden on IJK if IJK were to litigate this matter in Texas than the burden on HTC of having to litigate in Japan. Furthermore, (and more importantly) IJK does extensive business in other U.S. states. If IJK can be haled into court in other states based on those transactions, it does not seem unfair for IJK to defend a suit in Texas. IJK's situation is different from the Maryland corporation in *Loumar*. Since IJK already does extensive business in the U.S. there are fewer fairness reasons to justify the exclusion of Texas as a forum within the U.S.[2]

The following cases also support the exercise of personal jurisdiction in this case: *Micromedia v. Automated Broadcast Controls*, 799 F.2d 230 (5th Cir.1986) (foreign corporation breached contract with Texas corporation to supply interim radio equipment system after faulty equipment was sent per phone order); *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081 (5th Cir.1984) (defective steel castings introduced into stream of commerce causing economic injury); *Bullion v. Gillespie*, 895 F.2d 213, 215–16 (5th Cir.1990) (personal jurisdiction exercised over an out-of-state medical doctor who shipped drugs to Texas residents participating in an experimental medical treatment program); (corporation participated in supplying 5,000 metric tons of Yugoslavian asbestos to Houston-personal injury case; *WNS*, 884 F.2d at 204 (foreign franchisee applicant who broke franchise agreement with Texas franchisor).

It is therefore ORDERED that IJK's motion to reconsider the order entered November 27, 1989 is GRANTED; the order entered November 27, 1989 is amended to

---

1. Arguably Texas would have a greater interest in personal injury cases, however, financial damage alone can suffice. *See, e.g., WNS.*

2. For a discussion of the "aggregation of U.S. contacts" theory as applied to the first (minimum contacts) prong see *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 416 (9th Cir.1977) (no holding on that issue).

reflect that IJK's motion to dismiss for lack of personal jurisdiction is not MOOT; IJK's motion to dismiss for lack of personal jurisdiction has been considered again and is hereby DENIED; and the motion to amend the order entered November 27, 1989 to permit immediate appeal is also DENIED.