`

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 95-30600
_____


DWAYNE BLAIR; GLORIA BLAIR,

                                        Plaintiffs,

                    versus


SEALIFT, INC.,

            Defendant——Third Party Plaintiff——Appellant,

                    versus

LOUISIANA INSURANCE GUARANTY ASSOCIATION,

            Defendant——Third Party Defendant——Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana

_____

August 5, 1996


Before HIGGINBOTHAM, WIENER and PARKER, Circuit Judges.

WIENER, Circuit Judge:

    More than a decade ago, Defendant-Third Party Plaintiff-Appellant Sealift, Inc. (Sealift) impleaded Defendant-Third Party Defendant-Appellee Louisiana Insurance Guaranty Association (LIGA) into the instant action.  Since that time, the case has been

appealed to this court; consolidated with a number of similar cases; forwarded by us together with a certified case to the Louisiana Supreme Court; decided by us on the basis of the answer to the question certified; remanded to the district court; and, now, appealed once again to this court. At the heart of this ongoing controversy is the question whether LIGA is obligated to reinsure standard workers' compensation policies when claims are brought under those policies for maritime-related injuries. The particular issue raised by the instant appeal is whether the district court on remand properly held that LIGA is not obligated to cover such claims, and that it therefore need not reimburse Sealift for its costs, including attorneys' fees. Notwithstanding the fact that this last holding by the district court is inconsistent with this court's holding in the initial appeal of the instant case, we affirm because of supervening changes in the law.

## I.

## FACTS AND PROCEEDINGS

A. LIGA

In response to an increasing number of insolvencies among insurance companies statewide, the 1970 Louisiana Legislature enacted the Insurance Guaranty Association Law (IGAL).[1] The IGAL "created LIGA as a non-profit, unincorporated entity to pay valid claims, up to statutory limits, in the event an insurer who was a

---

[1]See LA. REV. STAT. ANN. §§ 22:1375 et seq. (West 1995).

member of [LIGA] became insolvent."[2]  Specifically, when insurance companies that are members of LIGA become insolvent, LIGA is required to "assume . . . the benefits and obligations of the direct insurance policies underwritten by the defunct carrier."[3]

The IGAL expressly provides, however, that several particular kinds of direct insurance will <u>not</u> be reinsured by LIGA.[4] Significant to the instant appeal is the fact that "ocean marine insurance" is one of those kinds of insurance excluded from LIGA's reinsurance obligations.[5]  Since 1985, the precise meaning of "ocean marine insurance" has been the subject of much litigation. That litigation, and the 1989 amendments to the IGAL adopted in response to it, are discussed below.

B.    PROCEDURAL BACKGROUND

1.    <u>In District Court:  Phase I</u>

In November 1984, Plaintiffs Dwayne Blair (Dwayne) and his wife, Gloria Blair, (collectively, the Blairs) filed suit under the Jones Act and general maritime law against Sealift, Dwayne's employer.  The Blairs alleged that Dwayne had been injured in the course of his employment as a crew member on one of Sealift's vessels.  At the time of Dwayne's alleged injury, Sealift was

---

[2]<u>Deshotels v. SHRM Catering Serv., Inc.</u>, 845 F.2d 582, 583 (5th Cir. 1988).

[3]<u>See</u> <u>Sifers v. Gen. Marine Catering Co.</u>, 892 F.2d 386, 388 (5th Cir.), <u>modified on other grounds</u>, 897 F.2d 1288 (5th Cir. 1990).

[4]<u>See</u> LA. REV. STAT. ANN. § 22:1377 (West 1995).

[5]<u>See id.</u>

insured under a "Standard Workmen's Compensation and Employers' Liability" insurance policy (the WC/EL policy) issued by Transit Casualty Company (Transit), a member of LIGA. Under the WC/EL policy, Transit owed Sealift the duties of defense and indemnity.

In December 1985, Transit was declared insolvent by the Louisiana's Commissioner of Insurance, and Transit's policies were canceled. As a result, in January 1986, Sealift demanded that LIGA assume Transit's obligations under the WC/EL policy. LIGA refused, asserting that the policy constituted "ocean marine insurance" within the meaning of the statutory exception to its reinsurance obligations.

In response, Sealift filed a third party complaint against LIGA in the Blair lawsuit, and the Blairs named LIGA as an additional defendant. In April 1986, Sealift filed a motion for summary judgment against LIGA, asserting that LIGA was obligated to pay the full amount of the Blairs' claim. Sealift also sought payment from LIGA of any attorneys fees and other costs incurred by Sealift in its defense against the Blairs' suit, as well as in its prosecution of the coverage claim against LIGA. In opposing the motion, LIGA insisted that (1) the WC/EL policy constituted "ocean marine insurance"; and (2) LIGA was therefore liable for neither the Blairs' claim nor Sealift's attorneys' fees and costs.

In October 1986, Sealift and the Blairs reached a settlement in the amount of $150,000. The Blairs agreed not to execute on the settlement against Sealift, however, until LIGA's obligations were judicially determined. Based on that settlement, the district

court entered a final, summary judgment dismissing the Blairs' claims against Sealift. In that judgment, the court also ordered LIGA to pay the amount owed to the Blairs under the settlement and to reimburse Sealift for its attorneys' fees and other costs.

   2.   First Appeal

      a.   *Certification*

LIGA timely appealed to this court from the district court's grant of summary judgment. We consolidated that appeal with a number of similar but unrelated cases that also raised the issue of LIGA's obligation to pay a claim brought for maritime-related injuries under a general workers' compensation policy. We then certified one of the cases, styled Deshotels v. SHRM Services, to the Louisiana Supreme Court.[6] We also suggested that, in answering the question certified in Deshotels, the Louisiana Supreme Court "m[ight] . . . find helpful portions of the record in two other cases pending before this court"——namely, the instant case, Blair v. Sealift, Inc., as well as another of the consolidated cases, Sifers v. General Marine Catering.[7]

---

[6]See Deshotels v. SHRM Catering Serv., Inc., 845 F.2d 582, 585 (5th Cir. 1988) ("The style of the case in which certification is made is Joseph Mike Deshotels, Plaintiff, versus SHRM Catering Services, Inc. . . . on appeal from the United States District Court for the Western District of Louisiana.") (certifying the following question: "Does this claim for maritime-related injuries, brought on the Standard Workmen's Compensation and Employers' Liability policy with a marine endorsement, involve 'ocean marine insurance' so as to be excluded . . . from the coverage of the Insurance Guaranty Association Fund?").

[7]See id. As a result of our decision to forward the Blair record to the Louisiana Supreme Court, there is some ambiguity as to whether we actually certified Blair as well as Deshotels. We need not resolve this debate, though, as its resolution does not

5

In January 1989, the Louisiana Supreme Court answered the question certified in <u>Deshotels</u>. That court held that the disputed "claim for maritime-related injuries, brought on a Standard Workmen's Compensation and Employers' Liability policy . . . does not involve 'ocean marine insurance' and is not excluded from the coverage of the Insurance Guaranty Association Fund."[8]

   b.   *The Legislature's Response*

Within months following the issuance of the Louisiana Supreme Court's answer to the question certified in <u>Deshotels</u>, the Louisiana Legislature responded by amending the IGAL. Prior to the enactment of the amendments, the IGAL provided that LIGA would reinsure "all kinds of direct insurance, except life, health, mortgage guaranty, and ocean marine insurance."[9] The amendments added the following language to the statute: "The kind and coverage of insurance afforded by any policy shall be determined by the coverage specified and established in the provisions of that policy regardless of any name, label, or marketing designation for that policy."[10] The amendments also inserted the following definition of "ocean marine insurance":

> "Ocean marine insurance" includes marine insurance as
> defined in R.S. 22:6(13), except for inland marine, as
> well as any other form of insurance, regardless of the

---

affect our analysis of the merits of the instant appeal.   <u>See</u> discussion <u>infra</u> part II.B.

   [8]<u>Deshotels v. SHRM Catering Serv., Inc.</u>, 538 So.2d 988, 993 (La. 1989) [hereinafter <u>Deshotels</u>].

   [9]<u>See</u> LA. REV. STAT. ANN. § 22:1377 (West 1989).

   [10]<u>See</u> LA. REV. STAT. ANN. § 22:1377 (West 1990).

name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks . . . . Such perils and risks include . . . liability of the insured for personal injury, illness or death . . . .[11]

        c.    *Post-Certification*

Soon after the amendments were enacted, and "[w]ith the benefit of th[e Louisiana Supreme Court's] [pre-amendment] resolution of our certified question,"[12] we again considered the consolidated appeals. LIGA argued that we should reject the pre-amendment result reached by the Louisiana Supreme Court on certification and instead retroactively apply the supervening amendments to the IGAL, thereby releasing LIGA from any responsibility to assume the WC/EL policies involved in the consolidated cases.

We rejected LIGA's recommended approach, however, as we "s[aw] no reason" to depart from the general rule that a state court's answer to a certified question is "final and binding upon the parties between whom the issue arose . . . [and thus] generally . . . the 'law of the case' in any further federal court proceeding involving those parties."[13] In particular, we "question[ed] whether the Louisiana Supreme Court would conclude that the recent legislation overruled its decision in <u>Deshotels</u>."[14]

---

[11]<u>See</u> LA. REV. STAT. ANN. § 22:1379 (West 1990).

[12]<u>Sifers v. Gen. Marine Catering Co.</u>, 892 F.2d 386, 389 (5th Cir. 1990) [hereinafter <u>Sifers</u>].

[13]<u>Id.</u> at 391.

[14]<u>Id.</u> at 392.

7

Having determined that the Deshotels decision governed all of the consolidated appeals, we held that LIGA was required to reinsure the claims arising from the standard workers' compensation policies involved in the cases. We also addressed the issue of LIGA's obligation to pay the attorneys' fees and other costs of litigation incurred by the insured employers. First, we held that an insured could not recover attorneys' fees and costs incurred in the successful prosecution of a claim against LIGA unless on remand the district court found that LIGA had acted "arbitrarily, capriciously, or without probable cause."[15] In addition, we concluded that LIGA could not be held liable for fees and costs incurred by an insured such as Sealift in the defense of claims brought by plaintiffs such as the Blairs if by statute those claims are excluded from LIGA's reinsurance obligations.[16] We then remanded each individual case to the district courts in which it had arisen for further proceedings consistent with our opinion.

3. Back In District Court: Phase II

While the instant case was pending on remand, LIGA agreed to cover the amount owed by Sealift to the Blairs under the settlement. LIGA refused, however, to cover Sealift's costs and attorneys' fees. Filing a motion for a summary judgment of dismissal of Sealift's claim for costs and attorneys fees, LIGA argued once again that the IGAL amendments should be applied

---

[15]Id. at 399.

[16]Id. at 399-400 (noting that "LIGA's statutory obligation is coextensive with that of the insolvent insurer").

8

retroactively to exclude the WC/EL policy from LIGA's reinsurance obligations. As noted by LIGA at the time, if the amendments were applied retroactively then any claim by Sealift for costs and attorneys' fees must fail for the following reasons: First, this court had held that LIGA cannot be liable for legal services rendered in the defense of nonrecoverable claims[17]; and second, as a matter of law, LIGA cannot be considered to have acted "arbitrarily, capriciously, or without probable cause" in contesting <u>unsuccessful</u> prosecutions of coverage claims.[18]

After considering LIGA's motion, the district court agreed that the IGAL amendments should be applied retroactively. Accordingly, it granted summary judgment dismissing Sealift's remaining claim for attorneys' fees and other costs of litigation. The district court acknowledged that, in the earlier appeal of the instant case, this court had expressly rejected the argument that the IGAL amendments should be interpreted as overriding the Louisiana Supreme Court's decision in <u>Deshotels</u>. Nevertheless, the district court followed a contrary but supervening Louisiana appellate court decision, <u>Tidelands Ltd I v. Louisiana Ins. Guaranty Ass'n</u>,[19] which had been issued after <u>Deshotels</u>, after the amendments, and after the remand of the instant case.

The <u>Tidelands</u> decision squarely holds that (1) under the IGAL

---

[17]<u>Id.</u>

[18]<u>Id.</u> at 399.

[19]645 So.2d 1240 (La. Ct. App. 1994), <u>writ denied</u>, 650 So. 2d 252 (La 1995).

9

amendments, WC/EL policies constitute "ocean marine insurance," and (2) the IGAL amendments should be applied retroactively.[20] Explaining its decision to follow Tidelands, the district court stated:

> This Court finds that Tidelands is the only post-amendments decision which directly addresses the matter before this Court, that is, whether WC/EL insurance should be considered "ocean marine insurance" when its coverage involves maritime claims. As such, it expresses the current interpretation of state law on the matter before this Court and should be followed absent a strong showing that the state supreme court would rule differently.

Understandably displeased with the district court's decision to depart from this court's earlier decision to abide by Deshotels, Sealift timely appealed. The issue is thus before us for the third time.

## II.

## ANALYSIS

A. STANDARD OF REVIEW

When reviewing a grant of summary judgment, we view the facts and inferences in the light most favorable to the non-moving party[21]; and we apply the same standards as those governing the trial court in its determination.[22] Summary judgment must be granted if a court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[20]See id.

[21]See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 266 (5th Cir. 1995).

[22]See Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995), cert. denied, 116 S. Ct. 704 (1996).

10

judgment as a matter of law."[23]

B.   THE MERITS

   1.   Defining The Issue

The central issue presented by this appeal is whether the district court erred in following Tidelands rather than our earlier Sifers decision which applied the Louisiana Supreme Court's certification response as set out in Deshotels.  If the district court properly relied on Tidelands, then any claim by Sealift for attorneys' fees and related costs must fail.  First, Sealift's demand for fees incurred in the prosecution of its coverage claim against LIGA would lack foundation, as in the end that claim would have proved unsuccessful.  Accordingly, LIGA's actions in resisting the claim could not, as a matter of law, be considered arbitrary or capricious.[24]   Second, Sealift's demand for fees incurred in defending against the Blairs' claim would be unfounded:  If Tidelands were followed, then the Blairs' suit would comprise a claim under "ocean marine insurance," which would be excluded by the IGAL as amended.  Consequently, under circumstances in which Tidelands prevails, LIGA would be liable for neither the Blairs' claim nor for any attorneys' fees and costs incurred by Sealift in defending against the claim.[25]

At oral argument to this panel, Sealift and LIGA debated the peripheral question whether Blair itself was certified to the

---

[23]FED. R. CIV. P. 56(c).

[24]Sifers, 892 F.2d at 399.

[25]Id. at 400.

11

Louisiana Supreme Court together with Deshotels. That, however, is a debate we need not resolve, as we conclude that regardless of whether, technically, Blair was or was not certified, the district court's decision to depart from our earlier ruling in the instant case should be affirmed.

2. The Law of the Case

Generally, under the "law of the case" doctrine, our prior rulings on given issues in a particular case must be followed "without reexamination, both on remand to the district court and on subsequent appeals to this court."[26] If such a ruling has effectively implemented a state supreme court's response to a question certified earlier from the case before us, then deference to the ruling is particularly appropriate: A certification answer "provide[s] this [c]ourt with indisputable authority for deciding difficult and previously unresolved issues of [s]tate law."[27]

_____

[26]N. Mississippi Communications, Inc. v. Jones, 951 F.2d 652, 656 (5th Cir.) (footnotes omitted), cert. denied, 506 U.S. 863 (1992).

We take this opportunity to note an additional "wrinkle" in this procedurally complex case. Assuming arguendo that Blair was not certified, the application of Deshotels opinion to the Blair case could either be considered the law of the case or the application of a "prior" panel decision, i.e., the binding precedent of this circuit. See Sifers, 892 F.2d at 391-92 (treating the certification response as binding on parties to the appeal who were not parties to the certified case, for the reason that the answer is "now the law of this circuit"). This distinction is of no moment here, however, as subsequent, clearly contradictory state law trumps both the law of the case and the otherwise binding nature of prior decisions of a panel of this court. See, e.g., Lee v. Frozen Food Express, Inc., 592 F.2d 271, 272 (5th Cir. 1979).

[27]Nat'l Educ. Ass'n, Inc. v. Lee County Bd. of Pub. Instruction, 467 F.2d 447, 449 (5th Cir. 1972).

Nevertheless, our prior rulings may be reexamined both on remand and on subsequent appeals if "controlling authority has since made a contrary decision of law applicable to such issues."[28] This reexamination principle applies even when our earlier resolution of the issue has followed a certification response by a state's highest court, for the certification process does not ultimately relieve us of "our constitutionally imposed duty to decide cases properly before us for review."[29]

We have in the past reexamined our own rulings that had been based on a response by a state supreme court to a certified question. The most instructive example for today's purposes is Laubie v. Sonesta Int'l Hotel Corp.[30]—a case with a procedural history remarkably similar to that of the instant case—in which we certified an issue regarding innkeeper liability to the Louisiana Supreme Court. With the benefit of that court's response to the certified question, we ruled on the liability issue and remanded to the district court. While the case was on remand, the Louisiana Legislature amended the Civil Code to counteract the Louisiana Supreme Court's interpretation of innkeeper liability.

In its decision on remand, the district court acknowledged our earlier decision in which we had implemented the Louisiana Supreme Court's analysis of the issue, but nevertheless applied the

---

[28]N. Mississippi, 951 F.2d at 656.

[29]Nat'l Educ. Ass'n, 467 F.2d at 449; see also Laubie v. Sonesta Int'l Hotel Corp., 752 F.2d 165 (5th Cir. 1985).

[30]752 F.2d 165.

13

amendments to the Civil Code as superseding the Louisiana Supreme Court's answer to our certified question —— and did so retroactively. With that case once again before us on appeal, we affirmed, noting that "[i]n Louisiana, a civil law jurisdiction, the legislative will, as expressed in the articles of the Code, is supreme."[31] Thus, even when one of our determinations follows a certification response, it may be reexamined on remand or on subsequent appeal when supervening authority has issued.

It is worth noting that the instant case differs from Laubie in that, here, the legislative amendments were issued prior to our earlier ruling in Sifers on the disputed issue. Nevertheless, subsequent to our Sifers ruling, the Tidelands court issued an opinion that directly contradicts our Sifers decision.[32] Moreover, in H & B Construction Co. of Louisiana v. LIGA,[33] another state appellate court independently determined that the IGAL amendments should be applied retroactively. The H & B Construction decision is not directly on point, as it deals with LIGA's obligation to reinsure protection and indemnity (P & I) policies rather than WC/EL policies. Nevertheless, H & B Construction strengthens the district court's hindsight conclusion that we "got it wrong," and the Tidelands court "got it right."

State appellate court decisions may constitute subsequent,

---

[31]Id. at 167.

[32]See Tidelands, 645 So.2d 1240.

[33]580 So. 2d 931 (La. Ct. App.), writ denied, 587 So. 2d 695 (La. 1991).

controlling authority that overrides an earlier determination by this court. Specifically,

> state intermediate appellate court decisions constitute indicia of state law even when decided after a federal court has rendered a contrary opinion if the federal court judgment has not yet become final. Such decisions, if applicable, should, therefore, be followed absent a strong showing that the state supreme court would rule differently.[34]

In the instant case, there has been no "strong showing" that the Louisiana Supreme Court would depart from the conclusions of the Tidelands and H & B Construction courts. Indeed, the only showing, strong or otherwise, is to the contrary: The Louisiana Supreme Court has denied writs in both Tidelands and H & B Construction. Although the refusal to grant a writ has no precedential effect, such a refusal does provide "persuasive" evidence that the Louisiana Supreme Court approves of the legal conclusions reached by the appellate court.[35] Accordingly, in this instance the district court properly determined that Tidelands constitutes controlling authority which compels a departure from our earlier certification-based decision on the issue of LIGA's obligation to

---

[34]See Lavespere v. Niagara Mach. & Tool Works, Inc., 920 F.2d 259, 260 (5th Cir. 1990) (footnotes omitted), cert. denied, 114 S. Ct. 171 (1993).

[35]See Colonial Pipeline Co. v. Agerton, 289 So. 2d 93, 96 (La. 1974) (noting that a refusal to grant a writ is "persuasive," but is without the precedential weight of a case in which a writ has been granted), aff'd, 421 U.S. 100 (1975).

15

reinsure the WC/EL policy.[36].549 So.2d 283 (La. 1989).[37]

## III.

### CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment dismissing Sealift's claim against LIGA for attorneys' fees and other costs is

AFFIRMED.

---

[36]Sealift urges that the Louisiana Supreme Court's decision in <u>Backhus v. Transit Casualty Co.</u>

clearly indicates that the Louisiana Supreme Court would reject the holdings of the <u>Tidelands</u> court. In <u>Backhus</u>, an opinion issued shortly after the Legislature amended the IGAL, the Louisiana Supreme Court recited its <u>Deshotels</u> opinion with approval. Nevertheless, the <u>Backhus</u> opinion never discusses the impact of the IGAL amendments on the state of the law; in fact, the amendments are not even mentioned in the opinion. Moreover, the central issue of the <u>Backhus</u> opinion is whether P & I policies, rather than WC/EL policies, constitute "ocean marine insurance." Thus, standing alone, <u>Backhus</u> provides no persuasive evidence on the issue of how the Louisiana Supreme Court would rule on the matter at hand. Any tentative indication to the contrary that we may have made in our earlier decision in the instant case, <u>see</u> <u>Sifers</u>, 892 F.2d at 392, is best characterized as dicta, the accuracy of which has not stood the test of time.