# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 98-51187

MICHAEL WILLIAMS,

Plaintiff-Appellant,

versus

BEXAR COUNTY, TEXAS and
RICARDO PONCE,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
SA-96-CV-1132

July 14, 2000

Before POLITZ, GIBSON,* and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:**

A jury returned a take nothing verdict in favor of Bexar County and Ricardo

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

**Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Ponce on Michael Williams' claims under 42 U.S.C. § 1983 and Texas law. From the Magistrate Judge's denial of his motion for a new trial, Williams appeals.

## BACKGROUND

Williams alleged that he suffered a violent sexual attack by fellow prisoner Cecil McClintock while incarcerated in the Bexar County Jail. He invoked 42 U.S.C. § 1983 and sued Bexar County and Ricardo Ponce, a prison official, alleging that his eighth amendment rights had been violated as a result of the policies, acts, and omissions of the defendants. He also alleged negligence under Texas law.

The case was tried to a jury. Prior to and during trial an issue was posed regarding the scope of cross-examination of McClintock. Magistrate Judge O'Connor also considered the prospective testimony of Lula Springs, a "continuity of care" worker[1] with whom McClintock spoke shortly after the alleged incident. The court held that the conversations between McClintock and Springs were privileged under **Jaffee v. Redmond**[2] and refused to allow Williams to call Springs to testify about McClintock's statements or to cross-examine McClintock about statements he might

---

[1] A "continuity of care" worker collects information from inmates that is used to determine whether they are eligible for certain community services upon their release from prison. The conversation between McClintock and Springs took place because of his impending release, not as a result of the allegations by Williams.

[2] 518 U.S. 1 (1996).

have made to others. McClintock denied the assault at trial. The jury returned a verdict for the defendants on all claims, and Williams timely moved for a new trial.

Judge O'Connor reexamined the matter and concluded that **Jaffee** did not apply to communications between Springs and McClintock, that McClintock should have been subject to cross-examination about all inconsistent statements, and that a new trial was necessary because of this error. He entered an order accordingly. Judge O'Connor then retired from the bench and this case was assigned to Magistrate Judge Mathy.

Bexar County moved for reconsideration of the court's decision to order a new trial. Judge Mathy granted this motion. She agreed with Judge O'Connor that the statement made by McClintock to Springs was not privileged under **Jaffee** and should have been admitted on cross-examination of McClintock or in direct testimony of Springs. She believed that because Williams chose not to make McClintock a party to the action, however, evidence of the statement was hearsay and could only have been admissible for purposes of impeachment and not as substantive evidence. Concluding that the jury could not have based a verdict on the statement because it merely affected the weight and credibility of the evidence, Judge Mathy opined that a new trial was not necessary. In short, Judge Mathy agreed with Judge O'Connor that he had erred in excluding the testimony, but concluded that the erroneous exclusion of evidence that

3

is "merely impeaching" was not sufficient to "nullify the decision of a properly functioning jury."

## ANALYSIS

Williams contends that Judge Mathy was prevented by the law of the case doctrine from reconsidering Judge O'Connor's decision to grant a new trial. The "law of the case" doctrine is a common label used to describe what is really four distinct rules.[3] Under each of its variations, the doctrine counsels the courts to refrain from revisiting issues that have been decided in the same case.[4] Such is the result of the "sound policy that when an issue is once litigated and decided, that should be the end of the matter."[5] The impact given to the doctrine, however, depends on the circumstances: in some cases it is discretionary, in others it is mandatory.[6]

---

[3]The "law of the case" doctrine has been used to describe (1) the desire of a single court to adhere to its prior rulings without need for repeated reconsideration; (2) the obligation of every court to observe the rulings of a higher court; (3) the respect that one judge or court owes the rulings of another judge or court in the same case or closely related cases; and (4) the consequences of failure to appeal an issue or preserve an issue for appeal. C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478, p. 788 (1981).

[4]**Arizona v. California**, 460 U.S. 605 (1983).

[5]**United States v. United States Smelting Ref. & Mining Co.**, 339 U.S. 186 (1950).

[6]**White v. Murtha**, 377 F.2d 428, 431-32 (5th Cir. 1967) (stating that a decision by an appellate court "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work manifest injustice").

4

When applied to decisions by judges on the same district court without an intervening appeal, the doctrine represents a rule of comity, not a limit on judicial power.[7]  Generally speaking, "when a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision."[8]  But unlike the doctrines of *stare decisis* and *res judicata*, the law of the case doctrine does not demand unwavering observance in this context. It must give way "to the interests of justice and economy when those interests are flouted by rigid adherence to the rule."[9]  Indeed, because the basis for deciding an issue often improves as a case progresses, district judges must have broad freedom to reconsider their prior interlocutory rulings.  For the same reason, a judge to whom a case has been transferred has the same power to reconsider prior rulings as the predecessor.[10]  Further, in a case such as this, where the predecessor judge is no longer

---

[7]**Messenger v. Anderson**, 225 U.S. 436 (1912); **Loumar, Inc. v. Smith**, 698 F.2d 759, 762 (5ᵗʰ Cir. 1983); C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478, at 790 (1981).

[8]**Loumar**, 698 F.2d at 762; **Stevenson v. Four Winds Travel, Inc.**, 462 F.2d 899, 904-05 (5ᵗʰ Cir. 1972) ("where a judge of a United States District Court ..., while a case is on his calendar, renders a decision and makes a judicial order ..., and thereafter the case is transferred to the calendar of another judge of such District Court, the latter judge should respect and not overrule such decision and order.").

[9]**Gallimore v. Missouri Pacific Railroad Co.**, 635 F.2d 1165 (5ᵗʰ Cir. 1981).

[10]**Abshire v. Seacoast Products, Inc.**, 668 F.2d 832 (5ᵗʰ Cir. 1982).

on the bench, a rule demanding strict adherence to all of the predecessor's orders would effectively deprive the parties of the opportunity for reconsideration.

We therefore review the decision by a trial judge to reconsider a prior trial judge's interlocutory ruling for abuse of discretion.[11] Without question, reconsideration of a ruling by a prior judge is within a judge's discretion when it is made in order to correct a clear error of law,[12] take account of a clarification in the applicable law from a higher court,[13] or reflect new facts that are part of a better-developed record.[14] This discretion, while "necessarily bountiful,"[15] is not unlimited, however, and does not permit a subsequent judge to "overrule the earlier judge's order or judgment merely because the latter judge might have decided matters differently."[16]

We conclude and hold that Magistrate Judge Mathy abused her discretion in rescinding Magistrate Judge O'Connor's order for a new trial. Her detailed opinion reflects no adequate basis for same. We find no suggestion of intervening legal or

[11]**Gallimore**, 635 F.2d 1165; **Loumar**, 698 F.2d 759.

[12]**Loumar**, 698 F.2d 759.

[13]**Gallimore**, 635 F.2d 1165; **Blair v. Sealift, Inc.**, 91 F.3d 755 (5th Cir. 1996).

[14]**United States v. Boruff**, 909 F.2d 111 (1990).

[15]**Loumar**, 698 F.2d 759.

[16]**United States v. O'Keefe**, 128 F.3d 885 (5th Cir. 1997).

factual developments which required her to revisit the issue, nor do we find a basis for the conclusion that conducting a new trial might work manifest injustice. Judge Mathy's opinion notes no error of law by Judge O'Connor. In fact, with regard to the paramount issue in this case, whether communications between McClintock and Springs were privileged, Judge Mathy reached precisely the same conclusion as Judge O'Connor.

The reason for the divergent resolutions is a difference in opinion over the potential impact of evidence that might be used to impeach McClintock's testimony. Judge O'Connor granted a new trial because he believed he had erred in preventing Williams' attorney from cross-examining McClintock about his statements to Springs. He no doubt recognized that because the fact of the assault was a matter about which the jury may have been uncertain,[17] and because McClintock was the only person other than Williams who potentially had knowledge of the alleged attack, the issue of McClintock's credibility was crucial. Judge O'Connor's decision was based on his belief that failure to allow Williams to confront McClintock resulted in substantial prejudice to his case. Judge Mathy based her decision to vacate the order for a new

---

[17]During its deliberations, the jury questioned the judge about the relationship between a finding that the rape occurred and the ultimate issue of negligence, suggesting that the jury might have had difficulty determining whether the rape actually occurred.

trial on her conclusion that evidence of statements made by McClintock to Springs would not be admissible except to impeach McClintock. In Judge Mathy's estimation, evidence that is "merely impeaching" is not sufficient to warrant a new trial. While she correctly noted that new trials rarely are granted based on the erroneous exclusion of impeachment evidence, it was certainly within Judge O'Connor's discretion to do so.[18] Any error of law, if prejudicial, is a valid ground for a new trial.[19] A prudent exercise of discretion under these circumstances requires deference to the judge who, having tried the case, is in a better position to decide this issue of potential prejudice. It is a given that the judge who conducts the trial typically is in the best position to estimate prejudicial impact on a jury.[20]

---

[18]**Carson v. Polley**, 689 F.2d 562 (5th Cir. 1982) (finding no abuse of discretion where trial court ordered new trial primarily based on the inadvertent submission to the jury of credibility evidence that the trial court had ruled inadmissible, and based in part on trial court's post-verdict reversal of an order excluding evidence that should have been admitted); **English v. Mattson**, 214 F.2d 406 (5th Cir. 1954) ("[A] motion for new trial is addressed to the sound discretion of the trial judge and will not be disturbed except for a clear abuse of that discretion.").

[19]C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2805, at 55 (1955). In disposing of this appeal on law of the case grounds, we decline to consider the propriety of Judge O'Connor's and Judge Mathy's conclusions regarding the applicability of federal privileges generally and the psychotherapist-patient privilege specifically. For purposes of this appeal, then, we assume without deciding that Judge O'Connor erred at trial by excluding Spring's testimony and prohibiting cross-examination of McClintock and that it was not an abuse of discretion for Judge O'Connor to order a new trial. We also decline to consider Judge Mathy's privilege rulings, under both 42 U.S.C. § 290dd-2 and Texas law, made in anticipation of a second trial.

[20]**Cruthirds v. RCI, Inc.**, 624 F.2d 632 (5th Cir. 1980).

We believe that reconsideration of the grant of a new trial under these circumstances was an abuse of discretion, and accordingly VACATE the order appealed, reinstate Judge O'Connor's order for a new trial, and REMAND this case for same.